JOHNNY H. WETHERINGTON v. LEAMON SMITH AND HIS WIFE,

LILLIAN SMITH.

**Highways § 12—**

The right to have a cartway laid off acros the lands of respondents in order to afford petitioner necessary access to a public highway may not be defeated by a contention that necessary access could be afforded petitioner by laying off a shorter cartway across the lands of others to a neighborhood public road when the evidence discloses that the junction with the neighborhood public road would be some two thousand feet from the highway and that at times the neighborhood public road was hazardous or impassable, and that the construction of a cartway thereon would be more difficult and expensive because of the topography and existence of woods.

APPEAL by respondents from *Mintz, J.,* October 1962 Term of CRAVEN.

Special proceeding under G.S. 136-68 and G.S. 136-69 to establish a private way (cartway) from petitioner's land to a public road.

It was stipulated the jury of view found petitioner was entitled to a private way over the lands of respondents to N. C. Highway 55, hereafter referred to as the highway, and laid off as such private way a strip of land 20 feet in width along the northwest boundary of respondents' land, as shown on map prepared by Darrell D. Daniels, Civil Engineer, on July 7, 1959. The said 20-foot strip extends from petitioner's land 757 feet to the right of way, and 787 feet to the center, of the highway. Mr. Daniels was one of the three members of the jury of view. The clerk affirmed the report of the jury of view and respondents excepted and appealed.

Upon trial in the superior court, the court submitted and the jury answered these issues:

"1. Is petitioner entitled to a private way over the lands of the respondents to a public road? Answer: Yes.

"2. Is the roadway laid off by the jury of view necessary, reasonable and just? Answer: Yes.

"3. What amount of damages are respondents entitled to recover from petitioner for the roadway laid off by the jury of view? Answer: $300.00."

The court entered judgment in accordance with the verdict. Respondents excepted and appealed.

*L. T. Grantham and Lee & Hancock for petitioner appellee.*
*David S. Henderson for respondent appellants.*

BOBBITT, J. Respondents' property, a quadrangle, is shown on the Daniels map and referred to herein as the Leamon Smith land. It fronts approximately 700 feet on the highway. The highway frontage is its northeast boundary. Its southeast boundary, extending southwest from the highway, is the land of Jacob Allen *et al.* Its northwest boundary, extending southwest from the highway, is the land of Cora Hubbard Smith. Its southwest boundary (rear line, 679 feet) is the northeast boundary of petitioner's tract of 70.11 acres.

The cartway laid off by the jury of view and established by the verdict and judgment is a strip 20 feet wide crossing the Leamon Smith land where it adjoins the Cora Hubbard Smith land.

The Cora Hubbard Smith land is between the Leamon Smith land and a road, leading southwest from the highway, referred to in the evidence as the School House or Two Mile Road, hereafter referred to as the School House Road. This road extends, in courses and distances shown on the Daniels map, a total of 2,057 feet to a ditch or canal designated on said map as C. Testimony as to the course(s), distance(s) and character of this road beyond C is indefinite. The northwest corner of petitioner's land, designated on said map as A, does not adjoin the Leamon Smith land but is to the rear (southwest) of the Cora Hubbard Smith land or the Riggs land. The distance from A to C, by the courses shown on said map, is 706 feet. A private road or cartway from A to C would not cross the Leamon Smith land but would cross the Riggs land or the Gaskins land or both.

Petitioner's tract of 70.11 acres does not abut the highway or the School House Road. It consists of an interior area in the shape of a pan and handle. The handle portion is to the rear (southwest) of the Leamon Smith land and is bounded on the southeast by the land of Jacob Allen *et al.* and on the northwest by the land of Cora Hubbard Smith. The pan portion, containing the greater acreage, extends to the rear (southwest) of the said handle and also to the rear (southwest) of the Cora Hubbard Smith land and the Riggs land.

Before the jury of view and also upon trial in the superior court, the question was whether the cartway, if established, should be located from A to C across the Riggs land or the Gaskins land or both or across the Leamon Smith land. If located across the Leamon Smith land, the location thereof along its northwest boundary was, under all the evidence, calculated to do the least damage to the remainder of the Leamon Smith land. Respondents contended the School House Road was a public road and that the distance from A to C (706 feet) was less than the distance from petitioner's northeast line across the Leamon Smith land to the highway. As indicated in our preliminary statement, the distance from petitioner's northeast line to the highway right of way is 757 feet.

With reference to the School House Road, there was evidence tending to show: Years ago a school for Negro children was conducted on said road at a point 1114 feet southwest from the highway. The said road was the means of access to the schoolhouse and also to dwellings and land abutting thereon. The school was abandoned some twenty years ago. There is no evidence said road was ever maintained by any public authority or agency. The evidence is conflicting as to whether the road is usable with reasonable safety, particularly the portion from the schoolhouse location to C, except under very favorable weather conditions. There is no evidence bearing upon the extent, if any, the road is presently maintained by anybody.

To answer the first and second issues in the affirmative, the court instructed the jury in substance it was necessary that petitioner satisfy the jury from the evidence and by its greater weight, *inter alia,* that there was not a public road or other means of transportation affording necessary or proper means of ingress to and egress from petitioner's land.

Respondents assign as error certain of the court's instructions pertinent to determining whether the School House Road was a public road or a neighborhood public road.

The evidence most favorable to respondents was insufficient to support a finding that the School House Road was a public road but was sufficient to support a finding that it was a neighborhood public road within the meaning of G.S. 136-67. It may be conceded the court's instructions bearing upon what constitutes a public road or a neighborhood public road were inexact and did not sufficiently apply the law to the evidence. However, it does not appear these instructions prejudiced respondents. Indeed, the court's instructions implied petitioner could use the School House Road, if he could get to it, as a means of access to the highway.

Petitioner's land does not abut the School House Road. Assuming the School House Road was available for petitioner's use as a matter of right or by permission, petitioner would have access thereto only if a cartway were laid off from A to C or (for a greater distance) over lands of Cora Hubbard Smith, Riggs or Gaskins. It is 2,057 feet from C to the highway. There was plenary evidence the School House Road was unsatisfactory and at times hazardous or impassable. Too, there was plenary evidence the area between A and C was lower and wooded and that it would be difficult and expensive to construct and maintain a road thereon.

Upon consideration of all the evidence, it appears there was not a public road or other adequate means of transportation affording necessary or proper means of ingress to or egress from petitioner's land. The crucial issue was whether it was necessary, reasonable and just to lay off a cartway across the Leamon Smith land as determined by the jury of view rather than lay off a cartway from A to C across the Riggs and the Gaskins land or both and thereby provide access to a point on the School House Road 2,057 feet from the highway. In the circumstances, respondents' said assignments of error are overruled.

Each of respondents' other assignments of error has been given careful consideration. Suffice to say, none discloses error deemed prejudicial to respondents to such extent as to justify a new trial.

No error.