RUSSELL C. WALTON, JR., AND WIFE, MARGIE G. WALTON v. EZRA MEIR AND WIFE, VIOLET S. MEIR

No. 7210SC224

(Filed 26 April 1972)

1. Highways and Cartways § 11— neighborhood public road — summary judgment

In an action to have a ten-foot wide dirt road on defendants' property which leads to plaintiffs' property and dwelling declared a neighborhood public road under the provisions of G.S. 136-67 relating to roads serving "a public use and as a means of ingress and egress for one or more families," defendants' motion for summary judgment was properly allowed where the uncontradicted evidence at the hearing on the motion established that, although there may have been some occasions since 1908 or 1910 that the road was used by the public, the road was being used exclusively by defendants' predecessor in title as a driveway to his house when the pertinent provisions of G.S. 136-67 were passed in 1941 and 1949, that in 1953 plaintiffs' predecessor in title built a house on the property now owned by plaintiffs and began using the road as a driveway with the permission of defendants' predecessor in title, and that at present the road serves only as a driveway for defendants and, until obstructed, as a driveway for plaintiffs, their guests and invitees, the evidence disclosing that the road serves an essentially "private" as opposed to a "public" use.

2. Highways and Cartways § 11— neighborhood public road — action to discontinue use

Where it does not appear that a road was a neighborhood public road when the pertinent provisions of G.S. 136-67 were passed or since, there was no necessity for any action or proceeding under G.S. 136-68 to "discontinue" its use.

3. Injunctions § 14— permanent restraining order — motion and notice of hearing

In an action to have a road on defendants' property declared a neighborhood public road wherein summary judgment was entered in favor of defendants, the court erred in permanently enjoining plaintiffs from using or attempting to use the road where there was no evidence that plaintiffs were using or attempting to use the road other than by this court action, and there was no motion or notice given of a hearing on a motion for such a restraining order.

APPEAL by plaintiffs from *Braswell, Judge,* 18 October 1971 Civil Session of Superior Court held in WAKE County.

This appeal represents the latest episode in a protracted course of litigation between these parties, who are adjoining landowners, going back to an arbitration agreement entered into 21 April 1966. Since that time, the parties have appealed to

this court on three occasions and have once petitioned the Supreme Court for a writ of certiorari, which was denied. For an understanding of the events, proceedings and other matters preceding the present appeal, reference should be made to the following cases: *Meir v. Walton,* 2 N.C. App. 578, 163 S.E. 2d 403 (1968), *cert. denied,* 274 N.C. 518; *Meir v. Walton,* 6 N.C. App. 415, 170 S.E. 2d 166 (1969); and *Walton v. Meir,* 10 N.C. App. 598, 179 S.E. 2d 834 (1971).

The facts necessary for an understanding of the present appeal are as follows: The plaintiffs (Waltons) and defendants (Meirs) are the owners of adjoining tracts of real property in Wake County, North Carolina, abutting State Road #1650 (Reedy Creek Road). The Waltons' tract directly fronts on this state public road for a distance of over four hundred feet. A ten-foot wide dirt road or path, the subject of the present appeal, leads from the Reedy Creek Road onto the lands of the Meirs, just inside of the boundary line between the Meir and the Walton tracts of land. (The Waltons alleged in their complaint that this road or path "is commonly known as Trinity Road," but the Meirs denied this allegation, and we shall refer to it simply as the "dirt road" or "road" in this opinion.)

In their complaint filed 21 November 1969, the Waltons alleged that this dirt road leads from the Meirs' land to their own and thence to their occupied dwelling and is a "neighborhood public road" within the meaning of G.S. 136-67. It was further alleged:

"7. That said neighborhood public road is a dirt road which has been in existence over 70 years next preceding the institution of this action.

8. That said road is commonly known as Trinity Road by the members of the public who have used it.

9. That for a period of at least fifty years Trinity Road extended over a distance of approximately one mile between Reedy Creek Road and Ebenezer Church Road, but after October, 1954, said road was no longer usable over its entire length in that the road became obstructed by trees felled by Hurricane Hazel.

10. That up until October, 1954, Trinity Road was freely, openly and visibly used by members of the public

who wished to travel from Reedy Creek Road to Ebenezer Church Road; that many people used said road to transport timber and pulpwood to a mill lying in the vicinity of the intersection of Trinity Road and Ebenezer Church Road.

11. That the portion of the road which remained after Hurricane Hazel remained in use by the public to reach a fishing pond, by Carolina Power and Light Company for maintenance of its power lines, by Reedy Creek Park Wardens, by horseback riders coming in and out of the park area, and by farmers who drove their machinery on said road.

12. That at all times hereinabove and hereinafter set out the use of the road by the public and the plaintiffs has been open, visible, notorious, and without the permission of the owners of the land over which Trinity Road has run.

13. That the plaintiffs relying on Trinity Road as a public road built and occupied a dwelling house abutting said road, and said road is now a necessary means of ingress to and egress from plaintiffs dwelling.

14. That Trinity Road is a neighborhood public road within the intent and meaning of North Carolina General Statute 136-67 in that:

(a) It has been a portion of the public road system of the State for over seventy years.

(Note: The word 'system' in paragraph (a) was stricken upon verbal motion of the plaintiffs at the hearing.)

(b) It has remained open and in general use as a necessary means of ingress to and egress from the dwelling house of the plaintiffs.

15. That on or about November, 1969, the defendants by and through their agents and employees obstructed said road by the following actions:

(a) By erection of a fence along the property line between plaintiff's and defendant's boundary line, said fence running across and obstructing the road.

(b) By pushing a large mound of soil onto said road.

(c) By pushing dirt onto said road at another point to the extent that the road is obliterated and impassible by an automobile for a distance of approximately 150 feet.

16. That the plaintiffs have been damaged by the actions of the defendants who have obstructed a neighborhood public road in that the plaintiffs have been denied necessary ingress and egress to their property and dwelling.

17. That the plaintiffs are informed and believe that the obstructions placed in said road by the defendants have been placed there wrongfully and if they are allowed to remain there the plaintiffs will be damaged.

18. That the plaintiffs are informed and believe, and upon information allege that it is the duty of the defendants to remove said obstructions, as well as to pay the plaintiff all damages which he may sustain on account of the obstruction until the same is removed."

For these acts, the Waltons sought an order requiring the removal of the alleged obstructions and damages in the amount of $10,000. The Meirs in their answer to the complaint denied each of the above-quoted allegations and as a first further defense and plea in bar, set out the plea of *res judicata* based upon the prior actions between these same parties. The question of *res judicata* came on to be heard by Judge Clarence W. Hall at a civil session of superior court held in Wake County. There, judgment was entered sustaining the plea and dismissing the Waltons' action, but, on appeal, this court reversed the judgment on the grounds that the prior action "only established the location of the boundary line between the parties' property and did not determine or foreclose a future determination of whether the road in question is a neighborhood public road." *Walton v. Meir*, 10 N.C. App. 598, 179 S.E. 2d 834 (1971).

As a second further answer and counterclaim, the Meirs incorporated by reference the allegations of the first further answer and defense (which dealt primarily with the pre-existing factual situation and litigation between the parties) and further alleged that the Waltons had ingress to and egress from their dwelling to State Road #1650 over a dirt road located entirely on their own property; that Russell Walton, one of the plaintiffs,

Walton v. Meir

had threatened to do physical injury to the Meirs; that this action was brought for the sole purpose of harassing the Meirs; and that the Meirs had incurred considerable legal expense in the extended litigation between the parties.

Whereupon, the Meirs prayed that the Waltons' action be dismissed and that "the Court issue its preliminary order restraining the prosecution of this action or any other legal action arising out of said boundary line dispute and controversy and that upon the trial of this action that the Court issue a permanent injunction restraining the plaintiffs from prosecuting or harassing in any manner the defendants arising out of the boundary line dispute or the dirt path." Reply to this counterclaim denying the material allegations was filed on 9 February 1970.

The cause came on to be heard before Judge Braswell at the 19 October 1971 Civil Session of Superior Court held in Wake County upon an "oral motion for Summary Judgment" by the Meirs. Four witnesses testified at the hearing, two of whom were called by the Meirs and two of whom were called by the court. The record is silent as to why the court called witnesses. The Waltons were given the opportunity to offer evidence but called no witnesses and offered no other type of evidence, other than that attempted to be elicited on cross-examination of the witnesses offered by the Meirs and the court. In the Waltons' brief, however, there are indications that the Waltons and the Meirs did offer into evidence certain exhibits about which there had been an agreement at a pretrial conference, but no exhibits were filed with the record on appeal in this case. At the conclusion of the evidence and argument of counsel, Judge Braswell entered a judgment filed 22 October 1971, granting the Meirs' motion for summary judgment, finding as a fact and concluding as a matter of law that the dirt road in question was not a "neighborhood public road" within the meaning of G.S. 136-67, declaring that the Waltons were not entitled to its use, and permanently enjoining them from using or attempting to use said road. To the findings of fact and conclusions of law, the Waltons excepted and appealed to the Court of Appeals.

*Jordan, Morris & Hoke by John R. Jordan, Jr., and Kenneth B. Oettinger for plaintiff appellants.*

*Manning, Fulton & Skinner by Howard E. Manning and John B. McMillan for defendant appellees.*

MALLARD, Chief Judge.

There was no exception, assignment of error or argument about the manner in which the motion for summary judgment was made or served (it was an oral motion made in open court), or about the manner in which the hearing was conducted or testimony presented. Although it does not appear that the movants complied with G.S. 1A-1, Rule 7(b)(1), requiring that motions made prior to a hearing or trial be in writing, or G.S. 1A-1, Rule 56(c) relating to service of motions for summary judgment, the parties stipulated that "this matter was duly heard" and that "his Honor had authority to hear this matter and to enter orders and a judgment therein"; therefore, the Waltons have not raised these procedural questions, and we will not disturb the judgment entered herein on procedural grounds. See, *Ketner v. Rouzer*, 11 N.C. App. 483, 182 S.E. 2d 21 (1971).

We do feel, however, that it is appropriate to note the following: Under Rule 56(e), "an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." In this proceeding the Waltons became the "adverse party."

The record does not reveal that the Waltons called any witnesses or presented evidence in any other form (with the possible exception of some exhibits), and summary judgment against them on that ground may have been appropriate. Four witnesses were called, however, two by the Meirs and two by the court, and the judgment herein appears to have been predicated solely upon their testimony and the pleadings of the parties; in effect, the hearing judge conducted a trial without a jury to determine if there was a genuine issue as to any material fact to be tried by the jury. Although *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E. 2d 823 (1971), is authority for the admission of oral testimony at a hearing on a motion for summary judgment, by virtue of Rule 43(e), we think that there is some danger in an overzealous use of such testimony.

In 6 Moore's Federal Practice (2d Ed.), ¶56.02[9], p. 2042, concerning the taking of oral testimony on a motion, it is said:

Walton v. Meir

"Rule 43(e) provides that when a motion is based on facts not appearing of record the court may hear the matter on affidavits or the court may direct that the matter be heard wholly or partly on oral testimony or depositions. The provisions of Rule 43(e) *can be* used in supplementing a summary judgment hearing through the use of oral testimony. This procedure should normally be utilized *only if a small link of evidence is needed,* and *not* for a long drawn out hearing to determine whether there is to be a trial."

In 6 Moore's Federal Practice (2d Ed.), ¶56.11[8], pp. 2206 and 2207, it is said:

"Also the summary judgment procedure is apt to be wasteful and burdensome if the summary judgment hearing is a protracted hearing, in effect a trial, to determine that a trial must be held. Of course, if all the parties desire to and do turn the summary judgment into a court trial they cannot be heard to object. In that event the court should make findings of fact and conclusions of law in accordance with Rule 52. * * * "

Federal Rule 52(a) contains the following provision which is not specifically set out in the North Carolina Rule 52: "Findings of fact and conclusons of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." The Waltons do not assign as error the fact that the trial judge made findings of fact and conclusions of law but do contend that these findings and conclusions were erroneous.

In view of the condition of the record and the stipulations of the parties, we will proceed to consider the appeal on its merits.

To the proceedings and judgment, the Waltons have taken thirty-one exceptions, grouped under thirteen assignments of error, and present two questions for decision on appeal:

"1. Did the Trial Court err in concluding that no genuine issue as to any material fact exists for the jury to determine and that the defendants' Motion for Summary Judgment ought to be allowed?

"2. Did the Trial Court err in allowing the defendants' Motion for Summary Judgment and declaring as a Finding

of Fact and Conclusion of Law that Trinity Road is not a neighborhood public road within the meaning of North Carolina General Statute Sec. 136-67?"

We will consider the two questions together.

The pertinent portions of G.S. 136-67, as rewritten in 1941 and again in 1949, read as follows:

> "*Neighborhood public roads.*—All those portions of the public road system of the State which have not been taken over and placed under maintenance or which have been abandoned by the State Highway Commission, but which remain open and in general use as a necessary means of ingress to and egress from the dwelling house of one or more families, and all those roads that have been laid out, constructed, or reconstructed with unemployment relief funds under the supervision of the Department of Public Welfare, and all other roads or streets or portions of roads or streets whatsoever outside of the boundaries of any incorporated city or town in the State which serve a *public use* and as a means of ingress or egress for one or more families, regardless of whether the same have ever been a portion of any State or county road system, are hereby declared to be neighborhood public roads and they shall be subject to all of the provisions of §§ 136-68, 136-69 and 136-70 with respect to the alteration, extension, or discontinuance thereof . . . . Provided, that this definition of neighborhood public roads shall not be construed to embrace any street, road or driveway that serves an essentially *private use,* and all those portions and segments of old roads, formerly a part of the public road system, which have not been taken over and placed under maintenance and which have been abandoned by the State Highway Commission and which do not serve as a necessary means of ingress to and egress from an occupied dwelling house are hereby specifically excluded from the definition of neighborhood public roads, and the owner of the land, burdened with such portions and segments of such old roads, is hereby invested with the easement or right of way for such old roads heretofore existing." (Emphasis added.)

This statute declares three distinct types of roads to be neighborhood public roads. The first portion of the statute

concerns only those roads which were once a part of the "public road system." The pleadings, after the allowance of the Waltons' motion to strike the word "system" from paragraph 14(a) of the complaint, do not assert that the dirt road in question was ever a part of the "public road system," and the evidence adduced at the hearing below tended strongly to show that it was not; therefore, this portion of G.S. 136-67 is not applicable to the factual situation before us.

The second type of road declared by the statute (G.S. 136-67) to be a neighborhood public road was all those roads that had been laid out, constructed, or reconstructed with unemployment relief funds under the supervision of the Department of Public Welfare. There is no allegation or proof that the Department of Public Welfare ever did anything concerning the dirt road in question. Therefore, this portion of the statute is not applicable in this case.

The third type declared by the statute (G.S. 136-67) to be a neighborhood public road (after the 1941 and 1949 revisions) was all those roads outside the boundaries of municipal corporations which served a public use and as a means of ingress and egress for one or more families. In their brief the Waltons contend that their claim for relief is based on this portion of the statute, the portion relating to the third category of neighborhood public road.

If the evidence at the hearing in the superior court discloses that the dirt road in question serves an essentially "private" as opposed to a "public use," and that there was no genuine issue as to any material fact concerning this use, Judge Braswell did not err in granting the Meirs' motion for summary judgment, declaring that said road was not a neighborhood public road. See G.S. 1A-1, Rule 56(c); *Kessing v. Mortgage Corp., supra;* and *Pridgen v. Hughes,* 9 N.C. App. 635, 177 S.E. 2d 425 (1970).

The evidence adduced at the hearing in the superior court is sumarized as follows, except where quoted: The first witness, called by the defendants Meir, was a highway engineer who had been employed by the State Highway Commission since 1937. His uncontroverted testimony tended to show that the dirt road in question had never been a part of the State or county system. He testified as follows:

" * * * Based upon the records of the State Highway Commission and the studies that I have made, Trinity Road has never crossed Reedy Creek Road and extended in a northeasterly direction. To my knowledge that section has never been maintained by the State or a part of the State System. It does not show anywhere on the records of the State Highway Commission in the inventories made of the county road system that were taken over by the State to have ever been taken over by the State."

The Meirs' other witness was Mrs. Sara Busbee Wyatt, a former employee of Mr. W. Brantley Womble, the Meirs predecessor in title to the tract of land on Reedy Creek Road. She testified, among other things, that in 1936 she became familiar with the tract of land now owned by the Meirs as well as the tract presently owned by the Waltons; that Trinity Road at that time "dead ended" at the Womble (Meir) property; that there was an old log cabin on the property when Mr. Womble bought the land but that was no "dwelling" at that time; that Mr. Womble and his wife had by 1949 used the old log cabin as a "residence" and had a driveway from this residence to the point where Trinity Road dead-ended on the Reedy Creek Road; that there was no road leading east from this driveway and no road in the vicinity of the driveway; that she had never seen a road leading to the present site of the Walton house until a house was constructed there in the 1950's and that the Walton tract prior to that time was only woodland and grazing land. On redirect examination, she testified that the driveway leading to the Womble house (the old cabin) was on Mr. Womble's land and went only to the cabin and made at circle at the doorway.

The court's evidence consisted of the testimony of two witnesses, Mr. Douglas F. Humphreys and Mr. Walter Haley. Humphreys testified that he was the Waltons' predecessor in title and had acquired the piece of property now owned by the Waltons in 1952; that at the time he purchased the property, there had been no dwelling house on it and the land was not being tended as farmland at that time—"it was just pines"; but that he had built a house on the property in 1952 and 1953 and had sold the property to the Waltons in 1958.

He further testified that he had known Mr. Brantley Womble, the adjoining property owner in 1952; that at the time he had bought his land, a road had run from Reedy Creek Road to the Womble house, but that it "went all the way through and to the other road"; that said road left the Womble property and went onto his property and thence into the Umstead State Park but that it was difficult to say if it went back on the Womble property again "because there was always a question about the line right there"; that there was no dwelling house located "in the park on that road"; that he had used the road to go to the Ebenezer Church Road three or four times a week; that the road had gone through to the Mt. Olive Baptist Church graveyard "located back there" almost at the end of his own property; that someone had once put gravel on the road and that it could be travelled by automobile; that some weeks fifteen or twenty people "would come through there," but that there were no other houses on the road at that time; and that the graveyard was now located on land owned by the Waltons and was about 300 or 400 feet from the Ebenezer Church Road.

On cross-examination, Humphreys testified that both he and Womble had used the dirt road to get to their respective houses and that no other way was available at the time; and further, " (i)n answer to your question whether I got permission from anyone to use the Old Trinity Road, I didn't exactly get permission from Mr. Womble. He came over and when I was, when I started building the house and asked me not to cut, said, 'Don't cut another road. We will use this one. It doesn't belong to me and doesn't belong to you. Somebody has to maintain it.' "

Court's witness Haley, a man 78 years of age, testified that, among other things, he lived about two or three miles from the intersection of "what is known as Trinity Road and the Reedy Creek Road"; that he knew where Mr. Brantley Womble had lived; that a "path" had led to the Womble house and then beyond to "the Cooke's Mill," which had last been in operation thirty or thirty-five years ago; that he thought the mill had been closed down before the Depression of the 1930's, but that it could have been several years before that; that there had been only one "dwelling house" between the Reedy Creek Road and the Ebenezer Church Road at that time but that he thought that the house (which had been located on the Womble-Meir tract)

had been torn down or had fallen down "prior to the time Roosevelt took office" but "not so long ago as twenty or twenty-five years ago"; that he was not familiar with the graveyard that had been testified to by Humphreys and had never seen such a graveyard; that he had last been through "that road" in 1909 or 1910 and not thereafter; and that in 1910, one could drive a wagon over the road.

After a brief cross-examination and redirect examination of this witness, the court gave the Waltons an opportunity to offer evidence, but they did not do so at that time.

The Waltons' primary contention is that the testimony we have attempted to summarize above was sufficient to raise a genuine issue as to a material fact and thereby withstand the Meirs' motion for summary judgment. We have reviewed the entire record in this case thoroughly, however, and though the testimony elicited at the hearing is not entirely free from all conflict and confusion, we think that the *material* facts were uncontroverted. If believed, Haley's testimony would tend to show that in 1910 or before, a dirt road, a wagon road presumably used by the public, crossed a portion of the tract now owned by the Meirs and went to a mill, but Haley further testified that he last went over this road in 1908 or 1910 and that the mill "was operated last along about maybe 1930 or 1935." There was only a single dwelling house near the road at that time, and, not only was it situated on the Meir and not the Walton tract, but it had fallen down "prior to the time Roosevelt took office."

Mrs. Wyatt's testimony, if believed, would tend to show that from 1937 to the "early 50's," there was no dwelling house on the Meir (Womble) tract except for the log cabin occupied by the Wombles about 1949; that there was no occupied dwelling on the Walton tract at all; and that the dirt road served only as a private driveway to the Womble house and did not go beyond. In addition, Judge Braswell found as a fact from an exhibit which was not included in the record on appeal:

> "That from *plaintiffs' Exhibit 2*, a map as recorded in Book of Maps 1967, Volume 1, page 39 Wake County Registry, it is made to appear that the roadway in question is referred to as a ten foot soil path and lies exclusively on the defendant Meir's side of the established boundary line;

and *that no portion of said ten foot soil path is shown to be leading to any part of the plaintiff Walton's property . . . . "* (Emphasis added.)

Humphreys' testimony, if believed, would tend to show that he owned the tract of land presently owned by the Waltons from 1952 to 1958; that there was no dwelling house on this land until he caused one to be built there in 1953; that, *at that time,* the road from the state road onto the Meir (Womble) tract went beyond the Meir tract onto the Walton (Humphreys) tract and thence to the Ebenezer Church Road and a graveyard; and that he had used this dirt road as a means of ingress to and egress from his own house after it was constructed. Furthermore, the quoted portion of Humphreys' testimony tends to show that his use of any portion of the dirt road across Womble's property was permissive.

Based upon the evidence adduced at the hearing, Judge Braswell in his "findings of facts" stated the material uncontroverted facts and concluded as a matter of law, among other things, that:

" . . . G.S. 136-67 in its present form was passed in 1949 by the General Assembly, and that in 1949 Trinity Road extended, or that road in controversy by whatever name it may be referred to, did not exist;

That if it may be contended that any portion of said road did exist, it existed only as a private driveway to the Womble log cabin for the exclusive use of the Wombles and guests and not for the use of the public or neighborhood; and that the State Highway Commission never maintained the roadway or driveway into the Womble place; that from at least mid 1930's to August, 1953, the roadway was not in general use as a necessary means of ingress to or egress from the dwelling house of one or more families and that between said years the roadway did not serve any public use or any dwelling house occupied by any family or families.

That the roadway has never been a portion of any State or county road system and has never been maintained by the State Highway Commission; that if it be considered that a roadway existed in any fashion between 1935 and 1953, that the same did not serve as necessary means of

ingress to and egress from an occupied dwelling house and as such was specifically excluded from being a neighborhood public road under the proviso of G.S. 136-67 and that the owner of the land in the interim years was invested with the easement of right-of-way for such old road if it theretofore existed; that the owner of the property embraced by the roadway, if it existed, in 1949 was Brantley Womble;

\*          \*          \*

And that no issue of fact exists for the jury to determine; and that the defendants motion for summary judgment ought to be allowed."

We note that what Judge Braswell called findings of fact were not findings in the sense of factual determinations of contradictory evidence, and although these "findings" included statements of some irrelevant "findings," as contended by the Waltons, they did accurately set forth all the material undisputed facts relating to the question of whether the dirt path was a neighborhood public road, on which the decision turned. We hold that Judge Braswell's statement of the material facts is based on the uncontroverted evidence and find no error in his conclusion that there is no genuine issue as to any material fact in this case for a jury to determine and, therefore, that the Meirs are entitled to a judgment as a matter of law. There is no evidence or admission in the pleadings in this record on appeal that the dirt road in question, either in 1941 or 1949, or at the date of this hearing, served anything other than a private use.

In 1933, the Legislature created and defined two types of neighborhood public roads, but it was not until 1941 that the statute, G.S. 136-67, was rewritten to include " . . . all other roads or streets or portions of roads or streets whatsoever outside of the boundaries of any incorporated city or town in the State which serve a public use and as a means of ingress or egress for one or more families regardless of whether the same have ever been a portion of any state or county road systems . . . . " (P.L. 1941, Ch. 183) It is this portion of the statute (after the 1949 revision) that the Waltons contend makes the dirt road in question a neighborhood public road. In the 1941 Act, as the last part of the same sentence in which all three types of neighborhood public roads are defined, there

appears for the first time the following: "Provided, that this definition of neighborhood public roads shall not be construed to embrace any street, road or driveway that serves an essentially private use." In 1949 revision, this proviso again was included and added thereto was the language contained in the present statute, G.S. 136-67, after the words "private use" as is hereinabove quoted. The Act of 1941, as rewritten in 1949, makes clear the legislative intent that no road serving an essentially "private use" is embraced in the definition of neighborhood public road.

[1] The evidence discloses that in 1941 and 1949 the Meirs' predecessor in title (but not the Waltons' predecessor in title) used a dirt roadway or path as a driveway leading from the State road to his cabin or house. At present, it appears that the road serves only as a driveway for the Meirs and, until it was obstructed, as a driveway for the Waltons, their guests and invitees. Such a road or driveway is not a neighborhood public road within the meaning of G.S. 136-67. Nor have the plaintiffs acquired any prescriptive rights or easement over the land of the defendants since Humphreys' completion of the house on the Walton tract in 1953.

In *Speight v. Anderson*, 226 N.C. 492, 39 S.E. 2d 371 (1946), Justice Barnhill (later Chief Justice), said:

"The General Assembly is without authority to create a public or private way over the lands of any citizen by legislative fiat, for, to do so, would be taking private property without just compensation. *Lea v. Johnson*, 31 N.C., 15. In construing the amendment, therefore, we may not assume that such was its intent. It follows that the 1941 Act, ch. 183, Public Laws 1941, necessarily refers to traveled ways *which were at the time established easements or roads or streets in a legal sense. It cannot be construed to include ways of ingress and egress existing by consent of the landowner as a courtesy to a neighbor, nor to those adversely used for a time insufficient to create an easement.*

\*     \*     \*

Furthermore the proviso expressly excludes streets and roads which serve an essentially private use. While there is evidence that the mail carrier used the old road during 1906 and 1907 and that members of the public trav-

eled both the old and the new road, *all the evidence tends to show that the road was laid out and maintained primarily as a convenience for those who resided on the Speight and Anderson tracts, an essentially private purpose. No continuous use for a public purpose is disclosed."* (Emphasis added.)

Although the *Speight* case was decided before the 1949 Amendment to G.S. 136-67, it contains an excellent discussion of the concept of the "neighborhood public road." See also, *Raynor v. Ottoway,* 231 N.C. 99, 56 S.E. 2d 28 (1949), wherein it was held that a jury finding that a road had been constructed with unemployment relief funds was not, standing alone, sufficient to sustain a judgment that a cartway was a neighborhood public road in the absence of a finding that it served "a *public* rather than a *private* use." (Emphasis added.)

The cases cited by the plaintiffs Walton are distinguishable. In *Smith v. Moore,* 254 N.C. 186, 118 S.E. 2d 436 (1961), the Court specifically noted that there was sufficient evidence to support but not compel a finding that the road in question served a *public* purpose and that a motion for directed verdict had been correctly denied. *Wetherington v. Smith,* 259 N.C. 493, 131 S.E. 2d 33 (1963), was a special proceeding under G.S. 136-68 and G.S. 136-69 to establish a cartway over the lands of another *to* a public road or a neighborhood public road. *Mosteller v. R.R.,* 220 N.C. 275, 17 S.E. 2d 133 (1941), concerned a portion of an *established highway* which had been abandoned by the State Highway Commission, and is not favorable in its result to the Waltons' position. In *Long v. Melton,* 218 N.C. 94, 10 S.E. 2d 699 (1940), access to a *relocated section of a State highway,* upon which the defendants' land had formerly abutted, was at issue; and in *Davis v. Alexander,* 202 N.C. 130, 162 S.E. 372 (1932), it was held that abutting landowners have an easement over a *public highway abandoned* by the State Highway Commission. These cases have little application to the present controversy.

[2] In the case before us, the admissions in the pleadings and the uncontroverted evidence sufficiently establish that the ten-foot wide dirt road involved herein is not and never has been a neighborhood public road under the provisions of G.S. 136-67. While there may have been occasions since 1908 or 1910 that this road was used by some members of the public, it does not

appear that it was a neighborhood public road in 1941 or 1949 or since, and therefore, contrary to the Waltons' contention, there was no necessity for any action or proceeding under G.S. 136-68 to "discontinue" its use.

In its judgment the court said:

"Now, THEREFORE, IT IS ORDERED, ADJUDGED AND DE-CREED that the motion of Ezra Meir and wife, Violet S. Meir for summary judgment is hereby allowed. It is specifically ORDERED AND DECLARED that the ten foot soil path, or Trinity Road extended, or by whatever other name it may have been described in the pleadings or evidence, is not a neighborhood public road within the meaning of G.S. 136-67; and it is specifically declared that the plaintiffs, Russell C. Walton, Jr., and wife Margie G. Walton, are not entitled to any use of that ten foot soil path as located upon plaintiffs' Exhibit 2, being map recorded in Volume 1, page 39, 1967, Wake County Registry; and the plaintiffs, Russell C. Walton, Jr. and wife, Margie G. Walton are permanently enjoined from using or attempting to use said ten foot soil path as located upon plaintiffs' Exhibit 2, being map recorded in Volume 1, page 39, 1967, Wake County Registry."

[3] In the counterclaim filed by the Meirs, there was no specific request that the Waltons be permanently enjoined from using or attempting to use the dirt road involved in this action. It is conceded, however, that a specific request in the pleadings is not necessary under G.S. 1A-1, Rule 54(c). The Meirs did request, however, that the court restrain the plaintiffs from "prosecuting or harassing in any manner the defendants arising out of the boundary line dispute or the dirt path." There was no evidence offered at this hearing on the "oral motion" of the Meirs for summary judgment that the Waltons were using or attempting to use (other than by this court action) the dirt road involved in this action. On this record there was no motion for or notice given of a hearing on a motion for a restraining order to enjoin the Waltons from using or attempting to use the dirt road involved in this action. Therefore, it was improper, under these circumstances, for the court to enter its restraining order, and that portion of the judgment reading as follows is vacated:

" * * * (A)nd the plaintiffs, Russell C. Walton, Jr. and wife, Margie G. Walton are permanently enjoined from using or attempting to use said ten foot soil path as located upon plaintiffs' Exhibit 2, being map recorded in Volume 1, page 39, 1967, Wake County Registry."

As thus modified, and for the reasons hereinabove set out, the judgment is affirmed.

Modified and affirmed.

Judges MORRIS and PARKER concur.