ARMISTEAD JARVIS v. COLON LEE POWERS AND WIFE, MAVIS POWERS AND JEFFREY DANIELS AND WIFE, SANDRA DANIELS

No. 852SC336

(Filed 6 May 1986)

1. **Highways and Cartways § 11.1— neighborhood public road—roadway treated as one unit—no error**

   In an action to establish a neighborhood public road, the trial court did not err by treating the old roadway as a single unit even though one portion was kept open and used for ingress and egress while the other part grew in

with trees and other plants in the late 1940s and was claimed under a deed. N.C.G.S. 136-67.

**2. Highways and Cartways § 11.1— neighborhood public road—evidence sufficient**

    In an action to establish a neighborhood public road, there was sufficient evidence to satisfy the first definition of N.C.G.S. 136-67 where the old roadway had remained open and in general use in 1933 as a necessary means of ingress to and egress from the dwelling house of one or more families, the entire roadway had remained open until the northern portion grew in in the late 1940s, and the roadway served as a necessary means of ingress and egress from an occupied dwelling house in 1949.

**3. Highways and Cartways § 11.1— neighborhood public road—findings not sufficient**

    In an action to establish a neighborhood public road, the trial court's conclusion that the roadway was a neighborhood public road was not supported by the findings where the court found only that the roadway served a public use before 1931 but did not make any findings on whether the roadway served an essentially private use in 1941, when N.C.G.S. 136-67 was amended to provide that no road serving an essentially private use could be declared a neighborhood public road.

**4. Dedication § 1.3— neighborhood public road—evidence of dedication insufficient**

    In an action to establish a neighborhood public road, the trial court's finding that the roadway had been dedicated to the public and the conclusion that respondents' land extended only to the edge of the roadway were vacated where two witnesses recalled that respondents' land was on the western side of the roadway but had no apparent knowledge of who owned the underlying title to the land traversed by the roadway; another witness recalled that the previous owners had given the roadway to the community; there was no evidence of an express or implied dedication or of acceptance by the State; and there was no evidence to disturb or modify the description in the deed as extending all the way to petitioners' property line.

    Chief Judge HEDRICK dissenting.

APPEAL by respondents from *Beaty, Judge.* Judgment entered 1 November 1984 in Superior Court, BEAUFORT County. Heard in the Court of Appeals 21 October 1985.

    *Carter, Archie & Hassell, by Sid Hassell, Jr., for petitioner appellee.*

    *Ward, Ward, Willey & Ward, by Joshua W. Willey, Jr., for respondent appellants.*

BECTON, Judge.

This case began on 2 December 1983 as a special proceeding before the Clerk of the Superior Court of Beaufort County, in which petitioner Armistead Jarvis sought to establish a "neighborhood public road" pursuant to N.C. Gen. Stat. Sec. 136-67 (1981) across land claimed by respondents Colon and Mavis Powers. After the clerk of court granted the relief sought by Jarvis, the trial court held a trial *de novo*, without a jury. From the trial court's judgment declaring an old roadway a "neighborhood public road," respondents (hereinafter Powers) appeal.

## I. FACTS AND HOLDING

The evidence presented to the trial court tended to show the following relevant facts: Jarvis and the Powers own separate tracts of land along Muddy Creek in what was formerly the village of South Creek in Beaufort County, North Carolina. *See* Appendix. The Powers claim title to the land through a deed which shows that the boundary of the land owned by their predecessors in title extended all the way to Jarvis' western property line. According to the Powers, their land is directly adjacent to Jarvis' land. Jarvis asserts that an old roadway separates the two tracts of land.

The state-maintained roadway nearest these properties is State Road #1909, known as Berkley Road, which does not abut either property. In 1938, when Jarvis acquired his land, there was a roadway running in a north-south direction connecting Berkley Road to a landing on Muddy Creek. This roadway ran along Jarvis' western property line and either overlapped the Powers' property or ran along their eastern property line. In the 1920s, the county maintained the roadway by keeping clear the ditches on both sides of the road. When the State took over the maintenance of the public road system between 1929 and 1931, the Department of Transportation did not take over maintenance of this roadway.

### A. Petitioner's Evidence

Jarvis testified that the old roadway was marked off by ditches and fences; that in the past it was used by the public to gain access to Muddy Creek; and that Foy Hopkins lived off the

old roadway and used it to get to Berkley Road. He also testified that the northern end of the roadway was allowed to grow in with trees, shrubs, vines and other vegetation. He said that from the time he acquired title to his property in 1938 until the time the growth in the road was bulldozed in 1972, the road was never kept open all the way from Berkley Road to Muddy Creek. Jarvis further testified that he could drive his car from Berkley Road onto the roadway and then onto his property (turning right just before the fence erected by the Powers), and that he could drive this route even when the northern portion of the roadway was grown in.

Etles Henries, a neighbor in the South Creek area, testified that the old roadway was used in the 1930s and 1940s by people going swimming in Muddy Creek, but that at least by the late 1940s or early 1950s the northern forty percent of the road had become overgrown with plants. He also testified:

> The condition of the road varied back and forth in relation to the use of the road. There was times it would be growed up. There would be times they would get it down if they were going to have a baptism or something. Immediately it would grow up again. It has never been traveled, shall we say, daily, so to answer your question on the condition of the road in 1964, it had varying conditions.

Andrew Brown testified that "probably 40 or 50 years ago," people used the roadway to get to Muddy Creek to buy oysters from Foy Hopkins, who sold them from his boat. William Snell, whose grandmother and step-grandfather used to own the Powers' land, testified that his grandparents "gave" the roadway to the public or community; that the Powers' land was west of the roadway; that the roadway was used in the early 1930s to access Muddy Creek for baptisms, rafting logs and buying oysters; and that the northern end had grown in by 1955.

### B. Respondents' Evidence

Powers presented two witnesses. The testimony of the first, a former South Creek resident, did not materially contradict petitioner's evidence. The second, a registered land surveyor and an expert witness, substantiated the Powers' claim to the land traversed by the northern portion of the old roadway. He

testified regarding a survey he had conducted, showing that the Powers' predecessor in title owned all the land up to Jarvis' property line. He also confirmed Jarvis' testimony that the southern portion of the roadway (the portion not claimed by the Powers) provides adequate access from Berkley Road into the southwestern corner of Jarvis' property. The southern end also provides access to the Hopkins' and Powers' properties.

Jarvis presented no written evidence that is part of the record on appeal to prove that the old roadway had been expressly dedicated to the public or that a dedication had been accepted by the State. He did not contend that it had been impliedly dedicated or that the old roadway is now a public road by virtue of the doctrine of adverse possession, easement by prescription or necessity, or any theory other than that it was a "neighborhood public road" under G.S. Sec. 136-67. Jarvis urged the trial court to preserve public access to the waterfront, which was endangered because the waterfront area had been extensively developed into homesites since the 1940s.

### C. Trial Court's Findings and Conclusions

The court made the following findings of fact, among others:

That along the western boundary of Petitioner's lands there was a road not less than sixteen feet wide which ran from the Berkley Road (S.R. 1909) along the western boundary of the lands of Dolly Hopkins described in that deed of record in Book 256, page 360, Beaufort County Registry and along the western boundary of Petitioner's lands aforesaid to a landing on Muddy Creek and along the eastern boundary of the lands of Respondents.

That said road was dedicated to the public by E. W. Ives and wife, Mary Ives, and the road together with a drainage ditch along its western edge was maintained by Beaufort County as a part of the county road system until the State of North Carolina took over the maintenance of public roads.

That said road was not taken over and placed under maintenance by the Department of Transportation of the State of North Carolina.

That while said road was maintained by Beaufort County it was used by the public for access to and from the public

landing on Muddy Creek for bathing, transporting logs, fishing and baptisms.

That there is and has been for many years a dwelling on Petitioner's lands and said road is and has been a necessary means of access to and from this dwelling and the Petitioner's lands do not border on any other road.

That within the last several years said road has been used by members of the public for access to Muddy Creek for bathing and swimming.

That Dolly Hopkins and the Respondents Colon Lee Powers and Mavis Powers use said road as a necessary means of access to their homes which are located upon lands adjacent to said road.

The court concluded as a matter of law:

That the road described above was at one time a part of the public road system in this State but it has not been taken over and placed under maintenance by the Department of Transportation.

That said road remained open and is in general use as a necessary means of ingress to and egress from the dwelling houses of more than one family.

That said road serves a public use and is outside the boundaries of any incorporated city or town in this State.

That said road is a neighborhood public road within the scope and meaning of G.S. 136-67.

The court then declared that the entire roadway from Berkley Road to Muddy Creek was a neighborhood public road.

### D. Respondents' Contentions on Appeal

On appeal, the Powers assign eight errors to the trial court's rulings. They assert that the court erred in finding as facts: (1) that the roadway is a necessary means of access to and from dwelling houses; (2) that within the past several years the roadway has been used by the public for access to Muddy Creek; and (3) that the roadway ran along the eastern boundary of the Powers' land. They also assert error in the conclusions of law: (1)

that the roadway remained open and in general use as a necessary means of access for more than one family; (2) that the roadway serves a public use; and (3) that the roadway is a neighborhood public road. The Powers contend that the judgment should be reversed because the findings and conclusions are not supported by the evidence. And finally, they claim that the court erred in describing the boundaries of the roadway.

## E. Summary of Our Holding

Central to the Powers' appeal is the argument that the trial court's treatment of the roadway as a single unit rather than as two portions was error because only one portion serves as ingress and egress for families in the area. We reject this argument and hold that the court did not err in treating the roadway as a single unit or in finding that the roadway is a necessary means of access. We conclude, however, that the court failed to make findings and conclusions as to whether the roadway served an essentially private use in 1941. Because this is necessary to support a judgment under G.S. Sec. 136-67, we vacate the judgment and remand for the court to make this determination. The court may base its findings for this determination solely on the record. We also vacate the findings that the roadway had been dedicated to the public by the Powers' predecessor in title and that the roadway runs along the eastern boundary of the Powers' property. Finally, we note a clerical error in the legal description of the roadway which should be corrected on remand if the court declares that the roadway served an essentially private purpose.

## II. ANALYSIS

Our review on appeal is limited to the inquiry whether there was any competent evidence to support the trial court's findings of fact and whether the findings of fact support the conclusions of law. See *Williams v. Pilot Life Insurance Co.*, 288 N.C. 338, 218 S.E. 2d 368 (1975); *Woody v. Barnett*, 239 N.C. 420, 79 S.E. 2d 789 (1954); *Montgomery v. Montgomery*, 32 N.C. App. 154, 231 S.E. 2d 26 (1977). In the case at bar, the evidence before the trial court and the court's findings must support its conclusion that the roadway between Berkley Road and Muddy Creek is a "neighborhood public road" under G.S. Sec. 136-67. The trial court did not rely on any other analysis in its conclusions of law or in its order.

North Carolina General Statute Section 136-67 provides in part:

> [1] All those portions of the public road system of the State which have not been taken over and placed under maintenance or which have been abandoned by the Department of Transportation, but which remain open and in general use as a necessary means of ingress to and egress from the dwelling house of one or more families, and [2] all those roads that have been laid out, constructed, or reconstructed with unemployment relief funds under the supervision of the Department of Human Resources, and [3] all other roads or streets or portions of roads or streets whatsoever outside of the boundaries of any incorporated city or town in the State which serve a public use and as a means of ingress or egress for one or more families, regardless of whether the same have ever been a portion of any State or county road system, are hereby declared to be neighborhood public roads . . . . Provided, that this definition of neighborhood public roads shall not be construed to embrace any street, road or driveway that serves an essentially private use, and all those portions and segments of old roads, formerly a part of the public road system, which have not been taken over and placed under maintenance and which have been abandoned by the Department of Transportation and which do not serve as a necessary means of ingress to and egress from an occupied dwelling house are hereby specifically excluded from the definition of neighborhood public roads, and the owner of the land, burdened with such portions and segments of such old roads, is hereby invested with the easement or right-of-way for such old roads heretofore existing.

The Supreme Court recently clarified the statute:

> This statute declares three distinct types of roads to be neighborhood public roads. The first part of the statute concerns only those roads which were once a part of the "public road system." The second part of the statute declares to be neighborhood public roads all those roads that had been laid out, constructed, or reconstructed with unemployment relief funds under the supervision of the Department of Public Welfare. The third part of the statute declares to be neigh-

Jarvis v. Powers

> borhood public roads all those roads outside the boundaries
> of municipal corporations which served a public use and as a
> means of ingress and egress for one or more families. *See*
> *Walton v. Meir*, 14 N.C. App. 183, 188 S.E. 2d 56, *cert.*
> *denied*, 281 N.C. 515, 189 S.E. 2d 35 (1972).

*West v. Slick*, 313 N.C. 33, 39, 326 S.E. 2d 601, 605 (1985). Neither
Jarvis nor the trial court attempted to rely on the second part of
the statute relating to roads built with unemployment relief
funds. The court did make findings relevant to parts one and
three, but it did not specify which part formed the basis for its
holding. For purposes of our decision, we need only consider the
first part of the statute, enacted in 1933, and the proviso, enacted
in 1941.

A

[1] Most of the Powers' arguments rely on the divisibility of the
old roadway into two portions: the northern portion, which was
described by several witnesses as periodically overgrown with
trees and other plants beginning in the late 1940s, and the
southern portion, which was kept open and used by Jarvis and
others as ingress from and egress to Berkley Road. (*See* Appendix.) The Powers claim only the northern portion under a
deed, and they erected a fence only along the northern portion.
They would have us treat the northern portion as a distinct segment of road not used as ingress or egress and, therefore, not a
neighborhood public road.

Support for the argument that the roadway should be viewed
as two separate parts arguably is found in the language of G.S.
Sec. 136-67. The statute states that roads or *portions* of roads are
declared neighborhood public roads if they satisfy the other
criteria.

A Supreme Court decision not cited by either party, *Smith v.
Moore*, 254 N.C. 186, 118 S.E. 2d 436 (1961), controls this issue.
Although that case arose in a different context, the relevant facts
in *Smith* are remarkably similar to the facts in the case at bar. A
roadway ran from a state highway to the defendant's residence
and then continued past the residence to the Neuse River. The
Court held that the evidence was sufficient to support a finding

that the roadway served as a necessary means of access to the defendant's residence and that it served a public purpose by providing access to the river. As in the case at bar, the roadway could have been divided into the portion necessary for access to the defendant's residence and the remaining portion which extended past defendant's residence to the river. But the Court treated the roadway as a single unit.

In enacting G.S. Sec. 136-67, the legislature intended to preserve the public right to use roads that would no longer be maintained by any government. The legislature no doubt realized that, in some areas, portions or segments of roads, streets or highways would be left unattended. We believe that these segments are the "portions of roads" referred to in the first statutory definition. The legislature in 1933 did not intend for courts to further whittle down these portions of roads to the bare necessary access routes between dwellings and state roads. Indeed, necessary access routes were already subject to the doctrine of easement by necessity, and the statute would have added the requirement that the necessary access route also serve a public purpose. Although there may be situations, such as a network of separate and identifiable abandoned roads, that call for the treatment of distinct portions of roads in one area as discrete units, that is not the case here. The fact that part of the roadway grew in with trees and other plants in the late 1940s or that a portion is claimed under a deed is immaterial under G.S. Sec. 136-67 in the instant case.

Therefore, the court did not err in treating the old roadway from Berkley Road to Muddy Creek as a single unit, and it should continue to do so on remand.

B

[2] The declaratory language used by the legislature in G.S. Sec. 136-67 indicates the legislature's intention for the status of roadways to be determined as of the enactment dates of the applicable statutory definitions and exceptions. *See Dotson v. Payne*, 71 N.C. App. 691, 323 S.E. 2d 362 (1984) (using 1941 in applying the third definition); *Walton v. Meir*, 14 N.C. App. 183, 188 S.E. 2d 56 (using 1941 and 1949, the enactment dates of the third definition and of the amendment to the proviso), *cert. denied*, 281 N.C. 515, 189 S.E. 2d 35 (1972). *But see Smith* (using 1951, when the parties acquired their rights to the property by deed).

The first statutory definition of neighborhood public road was enacted in 1933. The "private use" exclusion was added by amendment in 1941. *See* 1941 N.C. Sess. Laws Ch. 183. And the remainder of the proviso, beginning after the phrase "essentially private use," was added in 1949. *See* 1949 N.C. Sess. Laws Ch. 1215.

The evidence before the trial court was sufficient to show that in 1933, the old roadway, which had been part of the public road system, remained "open and in general use as a necessary means of ingress to and egress from the dwelling house of one or more families. . . ." There was ample evidence that Jarvis, Hopkins and, indeed, the Powers had no other access to Berkley Road. Several witnesses testified that the entire roadway remained open until the northern portion grew in in the late 1940s. Thus, there was sufficient evidence to satisfy the first definition. Based on similar evidence, it is clear that the roadway did serve as a necessary means of ingress to and egress from an occupied dwelling house in 1949. Thus, the second part of the proviso, added in 1949, is not applicable. *See*, G.S. Sec. 136-67. There is no need to consider whether the court properly applied the third definition.

## C

[3] In 1941, the legislature added the proviso that no road serving an "essentially private use" could be declared a neighborhood public road. This should be distinguished from the requirement under the third definition that a road must have served a public use. The proviso allows for some public use, but requires a determination whether the road was "essentially" a private or a public roadway. For example, in *Speight v. Anderson*, 226 N.C. 492, 496, 39 S.E. 2d 371, 373-74 (1946) (emphasis added), the Supreme Court reasoned:

> Furthermore the proviso expressly excludes streets and roads which serve an essentially private use. While there is evidence that the mail carrier used the old road during 1906 and 1907 and that members of the public traveled both the old and the new road, all the evidence tends to show that *the road was laid out and maintained primarily as a convenience for those who resided on the Speight and Anderson tracts, an essentially private purpose.* No continuous use for a public purpose is disclosed.

It has been held that a roadway used only as a private drive-way for residents on land abutting the roadway serves an essentially private purpose, even though guests and invitees of the residents also use it. *See, e.g., Dotson; Watkins v. Smith,* 40 N.C. App. 506, 253 S.E. 2d 354 (1979); *Walton; see also Raynor v. Ottoway,* 231 N.C. 99, 56 S.E. 2d 28 (1949) (In the absence of a finding that the cartway served as a public way rather than as a private way leading to a family burial ground, the judgment could not be sustained.). But evidence that a roadway is used by the public at its convenience as access to a waterway or, for example, to travel along the Outer Banks is sufficient to support a finding that the roadway is public and not essentially private. *See Smith,* 254 N.C. at 189, 118 S.E. 2d at 437-38; *see also Woody v. Barnett,* 235 N.C. 73, 77, 68 S.E. 2d 810, 813 (1952) (The roadway was public because it was used as access "to and from two important county [educational] institutions.").

We reject Jarvis' argument that the "private use" exception applies to the third, but not the first, type of neighborhood public road. The "private use" part of the proviso was added in 1941 by the same amendment that added the third type of neighborhood public road. Jarvis argues that, because the first definition already has a proviso (that the road must have been part of the State system) and the "private use" exclusion was added concurrently with the third definition, it makes sense to apply the "private use" exclusion to the third definition but not to the first.

Although the statute is not a model of clarity, the position of the proviso at the end of the entire, unified definitional part of the statute indicates the probable intent of the legislature — that the proviso be applied to each definition. *Cf. Raynor* (applying the first part of the proviso to the second definition of neighborhood public road, which was part of the original 1933 statute). There is nothing within the statute to suggest that the use of the words "this definition" were intended to limit the applicability of the first part of the proviso to the third type of neighborhood public road. Moreover, it is clear from the language, "shall not be construed," that the legislature meant simply to guarantee that no reading of the statute would result in an essentially private road being declared a public road. *See Watkins,* 40 N.C. App. at 511, 253 S.E. 2d at 357.

The court below failed to make any findings on whether the roadway served an essentially private use in 1941. The court, apparently applying the third statutory definition, found that the road served a "public use" before 1931 (when the county still maintained the roadway) and also "in recent years." But these findings are insufficient to support a conclusion that the road did not serve an essentially private use in 1941. There is evidence to suggest that the roadway in 1941 served not only as access to the state road, but other purposes as well. Several witnesses testified that in the late 1930s and early 1940s, the roadway extended to a landing on Muddy Creek and was used to some extent by people going swimming, bathing, boating, log-rafting, and to conduct baptisms. Nonetheless, this does not compel a finding that the road did not serve "an essentially private use." Because the trial court failed to make a finding on this issue using the proper time period, the conclusions of law are not supported by the findings and the judgment cannot be sustained. *See Raynor.* The roadway's primary use in 1941 must be determined by the court on remand.

D

[4] The court found that the Powers' eastern boundary ended at the western edge of the old roadway. Perhaps this was related to the finding that the Powers' predecessor in title had dedicated the roadway to the public. The court did not conclude as a matter of law that there had been a dedication, and we find insufficient evidence of dedication in the record.

Two witnesses said they recalled that the Powers' land was on the western side of the roadway, but they had no apparent knowledge of who owned underlying title to the land traversed by the roadway. Another witness recalled that the previous owners (his step-grandfather and grandmother) had given it to the community. This is insufficient evidence to support a conclusion that the previous owners had intentionally relinquished their title to the roadway under the doctrine of dedication. There is no evidence of an express or implied dedication, and there is no evidence of an acceptance by the State. Moreover, there appears no evidence to disturb or modify the description in the deed of the tract (now owned by the Powers) as extending all the way to Jarvis' property line. The ownership of this land may become important if the court finds on remand that the roadway served an essentially private use or if a discontinuance proceeding is initi-

ated subsequent to a final declaration of a neighborhood public road. The finding of dedication and the conclusion that the Powers' land extends only to the western edge of the roadway are vacated.

## III

On remand, the trial court must consider whether the old roadway served "an essentially private purpose" in 1941. If the court concludes that it did not, then it should enter final judgment declaring the roadway a neighborhood public road. We note that the description of the old roadway contains an obvious error that should be corrected on remand. According to the description, the roadway begins at an iron stake at the *southwestern* corner of Jeffrey and Sandra Daniels' lot and continues along the *eastern* boundary of the same lot. The correct beginning point appears to be the iron stake at the *southeastern* corner.

For the reasons set forth above, we

Vacate and remand for further findings and conclusions in accordance with this opinion.

Vacated and remanded.

Chief Judge HEDRICK dissents.

Judge PARKER concurs.

Chief Judge HEDRICK dissenting.

In my opinion the majority misconstrues and misapplies the proviso in G.S. 136-67. Under the circumstances in this case it is my opinion that there is no necessity for the trial judge to find the negative. The trial court need not explicitly find the absence of "an essentially private purpose." In my opinion the findings and conclusions are supported by the evidence, and I vote to affirm the judgment.

This case should be brought to a conclusion. The action commenced in 1983. The judgment appealed from was entered eighteen months ago and was heard in this Court more than six months ago. I vote to affirm.