FRANK O. ALFORD, WILKIE P. BEATTY, AS EXECUTRIX OF THE ESTATE OF PAUL B. BEATTY, CARSON INSURANCE AGENCY, INC., PATRICIA A. EDLUND, STANLEY EDLUND, JAMES M. GILFILLIN, LARRY G. GOLDBERG, RAQUEL T. GOLDBERG, BETTY F. RHYNE, ROBERT R. RHYNE AND NORMAN V. SWENSON, DERIVATIVELY IN THE RIGHT OF ALL AMERICAN ASSURANCE COMPANY, PLAINTIFFS v. ROBERT T. SHAW, AMERICAN COMMONWEALTH FINANCIAL CORPORATION, GREAT COMMONWEALTH LIFE INSURANCE COMPANY, ICH CORPORATION, CHARLES E. BLACK, S. J. CAMPISI, ROY J. BROUSSARD, TRUMAN D. COX, FRED M. HURST, C. FRED RICE, AND PEGGY P. WILEY, DEFENDANTS, AND ALL AMERICAN ASSURANCE COMPANY, BENEFICIAL PARTY

No. 545PA89

(Filed 5 December 1990)

1. **Pleadings § 8 (NCI3d); Appeal and Error § 147 (NCI4th) — shareholders' derivative action — failure to verify complaint — raised for first time on appeal**

Plaintiffs' failure to verify the complaint did not divest the trial court of subject matter jurisdiction in a shareholders' derivative action where defendants raise the issue for the first time during this appeal. Plaintiffs' failure to comply with the verification requirement in this case was not a jurisdictional defect because N.C.G.S. § 1A-1, Rule 23(b) addresses the procedure and not the substantive elements of a shareholders' derivative suit. Defendants waived their objection by failing to timely raise the issue until the fourth time the case has been heard in the appellate division.

**Am Jur 2d, Appeal and Error §§ 593, 600; Pleading §§ 341, 349, 391.**

2. **Corporations § 6 (NCI3d) — shareholders' derivative action — subsequent merger — no loss of standing**

Plaintiffs in a shareholders' derivative action did not lose their standing after a corporate merger in which all of their shares in All American Assurance Company (AAA), on whose behalf the suit was instituted, were converted into shares of defendant ICH Corporation. There is no requirement in N.C.G.S. § 55-55 (1982) that a shareholder bringing suit remain a shareowner after the time of the transaction complained of or after suit is filed. Even if there was a continuous ownership requirement under the statute, if in the course of a

ALFORD v. SHAW

[327 N.C. 526 (1990)]

shareholders' derivative suit defendants' actions terminate plaintiffs' shareholder status and these actions are closely related to the grounds for the derivative suit, plaintiffs would retain standing to continue prosecution of the suit.

**Am Jur 2d, Corporations §§ 2328, 2341, 2401.**

3. **Corporations § 6 (NCI3d); Rules of Civil Procedure § 56.5 (NCI3d)— shareholders' derivative action—summary judgment—findings of fact**

A summary judgment in a shareholders' derivative action complied with the mandate of N.C.G.S. § 55-55(c) (1982) despite the court's findings of fact.

**Am Jur 2d, Corporations § 2464.**

4. **Corporations § 6 (NCI3d)— shareholders' derivative action— settlement—procedure**

The trial court is required by N.C.G.S. § 55-55(c) (1982) to approve or disapprove any proposed discontinuance, settlement, dismissal or compromise of the suit in a shareholders' derivative action. The trial court is to first decide whether the proposal for disposition of the case was reached by qualified, independent, disinterested decision-makers who in good faith thoroughly investigated and evaluated the claims in the complaint. The trial judge may allow discovery and hear evidence, and the burden is on the movant, usually the corporation, to prove the independence, disinterestedness, and appropriate qualifications of the committee and the reasonableness of its investigation. The trial court must then exercise its own independent business judgment as to whether the case is to be discontinued, dismissed, compromised, or settled. The court is to balance any legitimate corporate claims as brought forward in the suit against the corporation's best interests as determined in part by the committee and must consider such ethical, commercial, promotional, public relations, and physical factors as may be involved in a given situation. The corporation as the party seeking final disposition of the case under N.C.G.S. § 55-55(c) (1982) has a burden of going forward with evidence and showing that continuing the action is more likely than not to be against the interests of the corporation. The

shareholders initiating the suit are also entitled to present evidence and arguments as to their contentions.

**Am Jur 2d, Corporations §§ 2452-2454, 2456.**

5. **Bills of Discovery § 1 (NCI3d); Corporations § 6 (NCI3d) — shareholders' derivative action — remand — discovery**

Discovery was correctly permitted upon remand of a shareholders' derivative action where an order was entered granting summary judgment for some defendants and partial summary judgment for All American Assurance Company (AAA) on 14 November 1983; that order was vacated by the Court of Appeals; the trial court on remand permitted discovery, conducted a lengthy hearing, and entered a judgment approving a proposed settlement of several matters, entered judgment for defendants on certain other issues, and dismissed the case; and defendants contend that the trial court erroneously permitted discovery on the step-one issues under the *Alford* analysis in 320 N.C. 465 because plaintiffs failed to contest those issues on the prior appeal. Although the primary focus of the court's opinion was to reject the approach of *Auerbach v. Bennett*, 393 N.E.2d 994, and to explain a two-step approach, the opinion also acknowledged that a stay on discovery and the erroneous application of the *Auerbach* approach had resulted in an incomplete record and that discovery would be permitted on remand. It was noted that the Court of Appeals' decision vacated the summary judgment, which had the effect of rendering the judgment null and void so that no part of it could thereafter be the law of the case.

**Am Jur 2d, Appeal and Error §§ 744, 746; Corporations § 2453.**

6. **Corporations § 6 (NCI3d) — shareholders' derivative action — written statement of issues required — burden of proof not shifted — no right to jury trial**

The trial court's requirement that plaintiffs file a written statement of the issues they plan to contest at a hearing on the disposition of a shareholders' derivative action was not error. In the exercise of his authority to control the proceedings under N.C.G.S. § 55-55(c) (1982), the trial judge proceeded properly in requiring a definition of the contested issues. Moreover, the hearing was appropriately held by the trial court sitting

ALFORD v. SHAW

[327 N.C. 526 (1990)]

without a jury. A litigant has no right to the determination of factual issues by a jury during proceedings occurring pursuant to N.C.G.S. § 55-55(c) (1982) and there is nothing in the record to indicate that the trial court shifted any burdens of proof to plaintiffs during this hearing.

**Am Jur 2d, Corporations §§ 2373, 2465.**

7. **Rules of Civil Procedure § 56.5 (NCI3d); Corporations § 6 (NCI3d) — shareholders' derivative action — summary judgment — no error**

The trial court appropriately resolved contested issues of fact during a hearing on the disposition of a shareholders' derivative action. Although it was erroneous to have entered summary judgment with respect to step one of the Alford analysis, the trial court's findings were supported by competent evidence, are thus conclusive on appeal, and the trial court properly denied plaintiffs' motion to suppress the committee report. Plaintiffs stated at the hearing that they agreed to the trial court's making findings of fact and conclusions of law with respect to step two of the Alford analysis and cannot now complain on appeal.

**Am Jur 2d, Corporations § 2464.**

ON discretionary review pursuant to N.C.G.S. § 7A-31 prior to determination by the Court of Appeals of a summary judgment entered by *Lewis, J.,* on 19 June 1989 in Superior Court, MECKLEN-BURG County. Heard in the Supreme Court on 17 May 1990.

*Cansler, Lockhart, Burtis & Evans, P.A., by Thomas Ashe Lockhart; Blakeney, Alexander & Machen, by J. W. Alexander, Jr., for the plaintiff-appellants, cross-appellees.*

*Casstevens, Hanner, Gunter & Gordon, P.A., by Nelson M. Casstevens, Jr. and Teresa L. Conrad, for defendant-appellees, cross-appellants, Shaw and Rice.*

*Womble, Carlyle, Sandridge & Rice, by H. Grady Barnhill, Jr., Robert E. Fields, III, and Anderson D. Cromer; Johnson & Gibbs, by Stuart M. Reynolds, Jr., for defendant-appellees, cross-appellants, ICH Corporation, Great Commonwealth Life Insurance Company and American Commonwealth Financial Corporation.*

ALFORD v. SHAW

[327 N.C. 526 (1990)]

*Adams, Kleemeier, Hagan, Hannah & Fouts, by Daniel W. Fouts and Peter G. Pappas, for defendant-appellees, cross-appellants, Black, Campisi, Broussard, Cox, Hurst and Wiley.*

*Petree, Stockton & Robinson, by Ralph M. Stockton, Jr. and Daniel R. Taylor, Jr., for All American Assurance Company, defendant-appellant.*

MARTIN, Justice.

This case is before the Court following proceedings which occurred after the remand ordered in the opinion reported in 320 N.C. 465, 358 S.E.2d 323 (1987). A summary of the proceedings occurring before remand may be found in that opinion. Upon remand the trial court permitted discovery and then conducted a lengthy hearing pursuant to N.C.G.S. § 55-55(c) (1982) to receive evidence and hear arguments on various motions of the parties regarding disposition of this shareholders' derivative action. After completion of the hearing, the trial judge entered a judgment in which he approved a proposed settlement of several matters which were raised by plaintiffs' complaint, entered judgment for defendants on certain other issues, and dismissed the case. Additional facts necessary for an understanding of the issues decided will be discussed below.

I. *Jurisdictional Issues.*

A number of defendants in this case argue that the trial court erred by failing to dismiss the case for lack of subject matter jurisdiction. *See* N.C.G.S. § 1A-1, Rules 12(b)(1) and 12(h)(3) (1983). Because they are logically prior to the matters brought forward for review by plaintiffs, we address these jurisdictional issues first.

A. *Lack of verification of the complaint.*

[1] Plaintiffs filed an unverified complaint initiating this suit on 4 November 1982. On 17 November 1982, one of the plaintiffs signed and filed with the clerk of superior court a paper intended to verify the complaint. This paper writing was notarized by Bruce M. Simpson, who was at that time one of the attorneys of record in the case. Defendants argue first that in order for the trial court to have had subject matter jurisdiction over this shareholders' derivative suit the complaint was required to be verified when originally filed, and that it is not sufficient to verify the complaint after it is filed. *See* N.C.G.S. § 1A-1, Rule 23(b) (1983) (requiring

complaint initiating shareholder derivative action to be verified by oath); *Boyd v. Boyd*, 61 N.C. App. 334, 300 S.E.2d 569 (1983). Secondly and alternatively, defendants argue that if verification of a pleading is sufficient to vest subject matter jurisdiction in the trial court *nunc pro tunc* to the date the original pleading was filed, the purported verification in the instant case was improperly executed and thus void because it was notarized by an attorney of record in the case. *See* N.C.G.S. § 47-8 (1984) ("No practicing attorney-at-law has power to administer any oaths to a person to any paper-writing to be used in any legal proceedings in which he appears as attorney."). *Cf.* N.C.G.S. § 1A-1, Rule 11(b) (1983) (pleadings which must be verified "shall be [verified] by affidavit . . . ."); *Ogburn v. Sterchi Brothers Stores, Inc.*, 218 N.C. 507, 508, 11 S.E.2d 460, 461 (1940) (an affidavit must be "taken before an officer having authority to administer such oath"). Therefore, defendants argue, because the complaint has not been properly verified the trial court never obtained subject matter jurisdiction at any point.

Plaintiffs respond to defendants' contentions by arguing that because defendants raised the verification issue for the first time on 9 January 1990 in the appellate briefs now before this Court, over seven years after the complaint was filed, and after many years of active litigation of this suit, defendants have waived their right to complain about verification. *See Sisk v. Perkins*, 264 N.C. 43, 46-47, 140 S.E.2d 753, 755-56 (1965).

We agree with defendants that the complaint in this case has not been properly verified. However, we hold that because N.C.G.S. § 1A-1, Rule 23(b) addresses the procedure to be followed in, and not the substantive elements of, a shareholder's derivative suit, plaintiffs' failure to comply with the verification requirement at the time the complaint was filed is not a jurisdictional defect. *See Venner v. Great Northern Railway*, 209 U.S. 24, 34-35, 52 L. Ed. 666, 669-70 (1908); *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570 (S.D.N.Y. 1972). In the present case, the defendants have waived their objection by failing to raise the issue of verification until this, the fourth time the case has been heard in the appellate division.

Both the North Carolina Rules of Civil Procedure and the Federal Rules of Civil Procedure contain a requirement that the complaint initiating a shareholder derivative action be verified under

oath. N.C.G.S. § 1A-1, Rule 23(b); Fed. R. Civ. P. 23.1 (1981). Because the present federal rule and its predecessors (which also contained a verification requirement) have been interpreted and discussed widely, we turn to federal cases to elucidate the purpose behind this requirement. We emphasize that certain aspects of our rule and the procedures in our State governing derivative suits may differ from the federal approach. However, insofar as the purposes of certain of the federal and state rules are congruent, we find cases explaining federal rules helpful.

The verification requirement at issue here:

[u]nquestionably . . . was originally adopted and has served since in part as a means to discourage 'strike suits' by people who might be interested in getting quick dollars by making charges without regard to their truth so as to coerce corporate managers to settle worthless claims in order to get rid of them. On the other hand, however, derivative suits have played a rather important role in protecting shareholders of corporations from the designing schemes and wiles of insiders who are willing to betray their company's interests in order to enrich themselves.

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 371, 15 L. Ed. 2d 807, 812-13 (1966). *Accord, e.g., Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177 (N.D. Ill. 1987) (adding that the requirement is also to insure that the plaintiff has investigated the charges and found them to be of substance). Because the rule containing the verification requirement is not jurisdictional in nature, *see Venner v. Great Northern Railway*, 209 U.S. 24, 34-35, 52 L. Ed. 2d 666, 669-70; *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570, where the purposes behind the rule have been fulfilled by the time the objection to a defective or absent verification is lodged, dismissal or summary judgment in favor of defendants is not appropriate. *E.g., Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 15 L. Ed. 2d 807; *Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570; *Deaktor v. Fox Grocery Company*, 332 F. Supp. 536, 541 (W.D. Pa. 1971), *aff'd*, 475 F.2d 1112 (3d Cir. 1973), *cert. denied*, 414 U.S. 867, 38 L. Ed. 2d 86 (1973). In the instant case the vigor with which both plaintiffs and defendants have litigated this case over the span of seven years, and the massive amount of discovery conducted—even before defendants have yet to file answers—are indications that the purposes behind the verification rule have been met.

ALFORD v. SHAW

[327 N.C. 526 (1990)]

Thus, we hold that in this case plaintiffs' failure to properly verify the complaint initiating this shareholder derivative action is merely a procedural defect which ordinarily would be curable by amendment to the pleadings. *E.g., Halsted Video, Inc. v. Guttillo*, 115 F.R.D. 177. However, in the instant case because defendants raised this issue for the first time during this appeal, addressing it as a jurisdictional challenge, plaintiffs were apparently unaware until briefs were filed in this Court in January 1990 of the problems with the purported verification paper filed 17 November 1982. Thus, they have had no opportunity since learning of defendants' challenge to move to amend the complaint in the trial court. Were we remanding the case to the trial division it would be appropriate for plaintiffs to move to amend to verify the complaint properly. *See, e.g., Weisfeld v. Spartans Industries, Inc.*, 58 F.R.D. 570. In light of our disposition of the case on this appeal, however, this is unnecessary. It suffices to say that plaintiffs' failure to verify the complaint did not divest the trial court of subject matter jurisdiction over this matter.

### B. *Plaintiffs' alleged loss of standing during litigation of this suit.*[1]

[2] A number of defendants also argue that the trial court lost subject matter jurisdiction over this derivative suit when, pursuant to a corporate merger occurring after the suit was filed, all of the plaintiffs' shares in All American Assurance Company ("AAA"), the corporation on whose behalf this suit was initiated, were converted into shares of defendant ICH Corporation. Because none of the plaintiffs remained shareholders of AAA, defendants argue, the plaintiffs lost their standing to sue derivatively on behalf of AAA once the merger was consummated.[2] Thus, as none of the

---

1. We note that the stipulation by some of the defendants not to *raise* the issue of standing is not sufficient to confer subject matter jurisdiction. Parties cannot stipulate to give a court subject matter jurisdiction when such jurisdiction does not exist. *E.g., Jones v. Brinson*, 238 N.C. 506, 509, 78 S.E.2d 334, 337 (1953).

2. Several of the defendants go on to argue that plaintiffs have no standing to sue them particularly. However, once we determine that plaintiffs retain standing to bring suit in the name of AAA, the question is not raised again with respect to each defendant. Once the trial court is determined to have subject matter jurisdiction over the case, challenges as to the status of plaintiffs' claims against a given party would properly be evaluated pursuant to motions under Rules 12, 56 and other rules of civil procedure. *Cf. Texfi Industries v. City of Fayetteville*, 44 N.C. App. 268, 269-70, 261 S.E.2d 21, 23 (1979), *aff'd on other grounds*, 301 N.C. 1, 269 S.E.2d 142 (1980) ("The gist of standing is whether there is a justiciable con-

ALFORD v. SHAW

[327 N.C. 526 (1990)]

plaintiffs retained standing, defendants continue, the trial judge's jurisdiction to decide the case was also taken away.

We reject defendants' arguments. Plaintiffs filed their complaint pursuant to N.C.G.S. § 55-55, the only provision of the North Carolina corporation statutes then in effect that spoke to the question of standing to maintain a derivative suit. Section (a) of this statute provides:

> (a) An action may be brought in this State in the right of any domestic or foreign corporation by a shareholder or holder of a beneficial interest in shares of such corporation; provided that the plaintiff or plaintiffs must allege, and it must appear, that each plaintiff was a shareholder or holder of a beneficial interest in such shares at the time of the transaction of which he complains or that his shares or beneficial interest in such shares devolved upon him by operation of law from a person who was a shareholder or holder of a beneficial interest in such shares at such time.

N.C.G.S. § 55-55(a) (1982). Defendants' argument assumes that a plaintiff who has filed suit pursuant to this statute is required to retain his shares throughout the course of litigation. However, there is no requirement in N.C.G.S. § 55-55 that a shareholder bringing suit remain a share owner "after" the time of the transaction complained about or "after" suit was filed.[3] Reading this statute in a reasonable light and giving it an ordinary meaning, we find there is no requirement of continuing share ownership in order for an individual who is a shareholder at the time of the transaction about which he is complaining and at the time the action is filed, to proceed with a derivative action.[4] *Cf. Gaillard v. Natomas Co.*, 173 Cal. App. 3d 410, 219 Cal. Rptr. 74 (1985), *rev. den.* (1986). Had the legislature intended to include such a requirement in the corporate statutes it would have done

---

troversy being litigated among adverse parties with substantial interest affected so as to bring forth a clear articulation of the issues before the court.").

3. This statute was amended effective 1 July 1990 and is now codified as N.C.G.S. § 55-7-40 (1990). We note that the new statute, while elaborating some of the procedures set forth in N.C.G.S. § 55-55, does not contain a continuing share ownership requirement.

4. To the extent the Court of Appeals' opinion in *Ashburn v. Wicker*, 95 N.C. App. 162, 381 S.E.2d 876 (1989), conflicts with the instant opinion the *Ashburn* case is no longer authoritative.

so. *Cf., e.g., Morrison v. Sears, Roebuck & Co.*, 319 N.C. 298, 303, 354 S.E.2d 495, 498 (1987) (the statutory inclusion of certain things implies the exclusion of others). This Court declines defendants' invitation to engraft a continuous share ownership requirement onto the statute. As one court stated when interpreting a California statute with similar language to N.C.G.S. § 55-55(a):

> To [read a continuous ownership requirement into the statute] would create an anomalous result. We could well have a situation where a shareholder files a derivative action, navigates laboriously through the pleading stage, undertakes extensive discovery, incurs sizeable monetary obligations, and then, after an elapse of several years, is precluded from proceeding further because his or her corporation has just merged with another. It could not have been the intention of the Legislature that the adjudication of an alleged wrong be concluded in this manner.

*Gaillard v. Natomas Co.*, 173 Cal. App. 3d 410, 414, 219 Cal. Rptr. 74, 76. *See also, e.g., Miller v. Steinbach*, 268 F. Supp. 255, 267 (S.D.N.Y. 1967).

Moreover, although many jurisdictions do require plaintiffs who initiated a derivative suit to maintain continuous share ownership during the course of litigation, an exception to this general rule allows shareholders who initiate a derivative suit to retain standing when their share ownership is terminated through an allegedly fraudulent merger or one occurring as a result of breaches of fiduciary duties by those in control of the corporation. *See, e.g., Lewis v. Anderson*, 477 A.2d 1040, 1046, n. 10 (1984); *Keyser v. Commonwealth Nat. Financial Corp.*, 120 F.R.D. 489 (M.D. Pa. 1988); *Eastwood v. National Bank of Commerce, Altus, Okl.*, 673 F. Supp. 1068, 1077 (W.D. Okl. 1987); *Arnett v. Gerber Scientific, Inc.*, 566 F. Supp. 1270 (S.D.N.Y. 1983); Balotti and Finkelstein, *Del. Law of Corps. & Bus. Orgs.*, § 13.7 (1988 and Supp. 1989). *See generally* Kane and Wadsworth, *The "Entry Requirements" for Shareholder Derivative Litigation*, 25 Tort & Ins. L.J. 880, 884-85 (1990); Note, *The Continuous Ownership Requirement: A Bar to Meritorious Shareholder Derivative Actions?*, 43 Wash. & Lee L. Rev. 1013 (1986); Note, *Survival of Rights of Action After Corporate Merger*, 78 Mich. L. Rev. 250, 258-59 & n. 44 (1979). The facts of the instant case also fit within this equitable exception to the continuous ownership principle.

Here, plaintiffs learned of plans for the merger at issue before filing the instant suit. In their complaint plaintiffs alleged that the intended merger was one of numerous unfair or fraudulent acts by defendants resulting, or that would result, in damage to AAA and its shareholders. Upon filing their complaint plaintiffs also obtained a temporary restraining order prohibiting consummation of the merger. After a hearing on plaintiffs' motion for a preliminary injunction, the trial court entered an order staying all proceedings in the derivative suit until a special investigation committee (hereinafter "the committee") established by AAA submitted a report containing its recommendations regarding settlement or compromise of the matters raised by the plaintiffs' complaint; however, the court did permit the merger to be carried out. The trial court's order recites, *inter alia*, that:

defendants ICH Corporation, American Commonwealth Financial Corporation and Great Commonwealth Life Insurance Company stipulate that:

1. They are subject to the jurisdiction of this Court in this action.

2. They shall not raise the issue that plaintiffs lose their standing to maintain this action by virtue of the merger.

3. They shall maintain the Special Investigative Committee in existence in accordance with the terms of the Agreement which is Exhibit A attached hereto, and there will be no amendment or modification of the Agreement without the Court's approval.

4. The Court retains jurisdiction of the cause and the parties.

The court also ordered that:

(3) Minority shareholders of All American Assurance Company who are now entitled to perfect their dissenter rights under the law do not have to take further action to preserve their dissenter rights until the Court has ruled on the report of the Special Investigative Committee.

The merger occurred shortly thereafter pursuant to an "Agreement and Plan of Merger" which contained the following provision:

MANNER AND BASIS OF CONVERTING SHARES

The mode of carrying into effect the merger and the manner and basis of converting shares of Surviving Corporation

ALFORD v. SHAW

[327 N.C. 526 (1990)]

Common Stock into shares of ICH Common Stock and the manner and basis of converting shares of Company Capital Stock into shares of Surviving Corporation Common Stock shall be as follows:

4.1 *Surviving Corporation Common Stock.* Each issued share of Surviving Corporation Common Stock (other than shares of Surviving Corporation Common Stock owned by Parent) outstanding on the Effective Date and all rights in respect thereof, by virtue of the merger provided for herein, on the Effective Date shall be cancelled and shall be converted into and become .5441 of one share of ICH Common Stock, which shares of ICH Common Stock shall be duly authorized, validly issued and outstanding, fully paid and nonassessable; provided however, that such outstanding shares of Surviving Corporation Common Stock, if any, held by dissenting shareholders who have ultimately perfected their statutory rights, if any, of appraisal shall not be deemed by virtue of the merger provided for herein to represent whole shares of ICH Common Stock or the right to receive cash for fractional shares of ICH Common Stock under the terms and subject to the conditions of this Agreement, *but shall be relegated to such statutory rights*, if any, as are provided therefor. No stock or other securities of ICH are to be issued in respect of any of the shares of Surviving Corporation Common Stock owned by Parent on the Effective Date, all of which shall, by virtue of the merger provided for herein and without any further action on the part of Surviving Corporation or ICH, continue to be outstanding on and after the Effective Date. All shares of surviving Corporation Common Stock which are held in the treasury of Surviving Corporation immediately prior to the Effective Date shall automatically be cancelled on the Effective Date and cease thereafter to exist.

(Emphasis supplied.) Under an assumption that the continuous ownership rule obtains in North Carolina, defendants argue that because the plaintiffs in this suit did not pursue their statutory dissenters' rights, *see* N.C.G.S. § 55-113 (1982), they necessarily acquiesced in the conversion of their AAA shares into ICH stock as a result of the merger. Having "voluntarily" complied with the terms of the allegedly fraudulent merger engineered by defendants, plaintiffs are argued to have lost their authority to continue the derivative

suit on behalf of AAA, because of the extinguishment of their share ownership in AAA.

However, defendants' argument that plaintiffs had a real choice with respect to the merger and their ability to continue to have standing in the instant case is not credible. Defendants argue that if plaintiffs were unhappy with the merger they should have pursued their statutory dissenters' rights under N.C.G.S. § 55-113. While it may be true that plaintiffs had an opportunity to take that route, to have done so would have also allowed defendants an even stronger argument that plaintiffs thereby lost standing to maintain a suit on behalf of AAA. *See* N.C.G.S. § 55-113(e) (1982) (upon surrender of his share certificates and payment pursuant to the dissent procedure "the shareholder shall cease to have any interest in [such] shares or in the corporation"). Offered the two horns of a dilemma created by defendants, the plaintiffs chose the one less apparently likely to deprive them of standing to continue the suit on behalf of AAA. The courts of North Carolina will not permit this transparent attempt by defendants to unilaterally undermine this shareholder derivative suit to result in dismissal of the case. *See* N.C.G.S. § 55-55(c) (1982).

Under these facts, even were continuous ownership a requirement under the statute, we hold that if in the course of a shareholder derivative suit defendants' actions terminate the plaintiffs' shareholder status and these actions are closely related to the grounds for the derivative suit, the plaintiffs would retain standing to continue prosecution of the suit they initiated. To hold otherwise, that is to hold that a merged corporation or its shareholders loses standing to sue in a situation in which the allegedly wrongful activities of the defendants forced the plaintiffs to lose their status as shareholders, would be highly inequitable. *See Miller v. Steinbach,* 268 F. Supp. 255, 267 (S.D.N.Y. 1967); *Keyser v. Commonwealth Nat. Financial Corp.,* 120 F.R.D. 489.

Having addressed defendants' claims concerning subject matter jurisdiction, we turn to the matters brought forward by the plaintiff-appellants for review. A preliminary remark as to the scope of the remaining matters presented for review is appropriate.

## II. *Scope of Review.*

[3] The sole contention advanced by plaintiff-appellants during this appeal is "the Superior Court erred in granting summary judg-

ment." While normally the question of whether a motion for summary judgment was properly granted is resolvable by examining the record to see whether North Carolina Rule of Civil Procedure 56 and standard summary judgment principles as set forth in case law have been followed, the instant case is not so easily determinable. Here, summary judgment was decreed on pages 190-91 of a 193-page judgment, virtually every page of which was filled with findings of fact. While limited findings of fact are occasionally found not to sound the death-knell for a summary judgment, *e.g.*, *Singleton v. Stewart*, 280 N.C. 460, 186 S.E.2d 400 (1972), generally if a review of the record leads the appellate court to conclude that the trial judge was resolving material issues of fact rather than deciding whether they existed, the entry of summary judgment is held erroneous. *E.g.*, *Stonestreet v. Motors, Inc.*, 18 N.C. App. 527, 197 S.E.2d 579 (1973). An examination of the form of the judgment and the substance of the proceedings leading to its entry is necessary to determine whether the judgment complies with summary judgment principles, or whether in fact it is more accurate to characterize what occurred in the trial division as a bench trial. *Cf. Walton v. Meir*, 14 N.C. App. 183, 188 S.E.2d 56, *cert. denied*, 281 N.C. 515, 189 S.E.2d 35 (1972). In the instant case we have undertaken this examination and, as explained below, hold that despite the court's findings of fact the judgment entered complies with the mandate of N.C.G.S. § 55-55(c).

III. *Procedure under N.C.G.S. § 55-55(c) (1982)*.

[4] Under N.C.G.S. § 55-55(c), after a derivative suit is filed, the trial court is required to approve or disapprove any proposed discontinuance, settlement, dismissal or compromise of the suit. Pursuant to this Court's decision in *Alford*, 320 N.C. 465, 358 S.E.2d 323, the trial court is to undertake a two-step review of motions brought under N.C.G.S. § 55-55(c): First, it is to decide whether the proposal for disposition of the case which is submitted to the court was reached by qualified independent disinterested decision-makers who in good faith proceeded to thoroughly investigate and evaluate the claims set forth in the complaint. In so doing, the trial judge may allow discovery to enable him to assess the committee of decision-makers, the investigation made by the committee, the findings of the committee, and the recommendation of the committee. After hearing evidence on these matters, the trial court is to determine the independence, disinterestedness, and good faith of the committee in making its investigation, in addition to the reason-

ableness of the bases relied upon by the committee in concluding and recommending that the cause of action on behalf of the corporation be disposed of as recommended.

The burden is on the movant, usually the corporation on whose behalf the suit was initiated, to prove the independence, disinterestedness, and appropriate qualifications of the committee and that it conducted a reasonable investigation in good faith of the matters alleged in the complaint. *See Kaplan v. Wyatt*, 484 A.2d 501 (Del. Ch. 1984), *aff'd*, 499 A.2d 1184 (1985). The committee is not entitled to a presumption of independence, disinterestedness, good faith, or reasonableness.

The second step required under N.C.G.S. § 55-55(c) and our decision in 320 N.C. 465 requires the trial court to exercise its own independent business judgment as to whether the case is to be discontinued, dismissed, compromised or settled. At this stage the court is to balance (1) any legitimate corporate claims as brought forward in the derivative shareholder suit against (2) the corporation's best interests as determined in part by the committee which evaluated the derivative complaint. Factors to be considered in this second step process include: costs to the corporation of litigating the suit (including attorneys' fees, out-of-pocket expenses related to the litigation, time spent by corporate personnel preparing for and participating in litigation, and indemnification) and the benefits to the corporation in continuing the suit. *See generally Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981); *Joy v. North*, 692 F.2d 880, 891-93 (2d Cir. 1982), *cert. denied*, 460 U.S. 1051, 75 L. Ed. 2d 930 (1983); *Abella v. Universal Leaf Tobacco Co., Inc.*, 546 F. Supp. 795, 801 & n.13 (E.D. Va. 1982); Solovy, Levenstam, and Goldman, *Shareholder Derivative Litigation: Role of Special Litigation Committees*, 25 Tort & Ins. L.J. 864, 867-75 (1990). In exercising its own independent business judgment, the court must consider "such ethical, commercial, promotional, public relations and fiscal factors as may be involved in a given situation." *Kaplan v. Wyatt*, 484 A.2d 501, 509. The corporation as the party seeking final disposition of the case under N.C.G.S. § 55-55(c) has the burden of going forward with evidence on such items, and to show that continuing the action is "more likely than not to be against the interests of the corporation." *Joy*, 692 F.2d at 892. Of course, the shareholders initiating the suit are also entitled to present evidence and arguments as to their contentions. Ultimately, however, while "the review contemplated does not lend itself

ALFORD v. SHAW

[327 N.C. 526 (1990)]

to any formula-like approach," it is for the court to decide whether the case begun in the Superior Court will continue. Cox, *Heroes in the Law: Alford v. Shaw*, 66 N.C.L. Rev. 565, 580 (1988).

We turn now to the proceedings which occurred in the present case after the remand ordered by this Court in 320 N.C. 465. Before reaching the question of the propriety of the judgment entered, an initial question is whether the trial court erred in allowing discovery with respect to certain "step one" issues.

## IV. *Discovery Ordered upon Remand.*

[5] A number of defendants argue that upon remand pursuant to the opinion reported in 320 N.C. 465, the trial court erroneously permitted discovery with respect to the so-called step one issues. Defendants argue that plaintiffs should have been foreclosed from reopening these issues for the following reasons: On 14 November 1983 an order was entered in the present case granting summary judgment to defendants Wiley, Campisi, Hurst, Broussard, Black, and Cox, and granting partial summary judgment to All American Assurance Company. Plaintiffs appealed from this order, and it was later vacated by the Court of Appeals. *Alford v. Shaw*, 72 N.C. App. 537, 324 S.E.2d 878 (1985), *modified and aff'd*, 320 N.C. 465, 358 S.E.2d 323 (1987). It is defendants' contention now that plaintiffs failed to contest during this prior appeal a part of the 14 November 1983 order which stated: "The Court is further of the opinion that there is no genuine issue of a material fact as to the disinterestedness, independence, and good faith of the Special Committee, or as to the scope of the investigation or the appropriateness of the procedures adopted and followed by the Special Committee in investigating the claims asserted . . . ." Defendants argue that because plaintiffs failed to contest this aspect of the 1983 order, it is the law of the case, and therefore plaintiffs should not have been permitted to reopen these issues when the case was remanded to the trial division after the vacation of the summary judgment order.

The 1983 judgment and notice of appeal therefrom are properly part of the record on appeal in the instant case. Further, taking judicial notice of the briefs filed in this Court upon appeal from that judgment, *Swain v. Creasman*, 260 N.C. 163, 164, 132 S.E.2d 304, 305 (1963); *In re Byrd*, 72 N.C. App. 277, 324 S.E.2d 273 (1985), it is apparent that plaintiffs did argue that the trial court erroneously entered summary judgment because the report of the committee

ALFORD v. SHAW

[327 N.C. 526 (1990)]

itself indicated the committee members' lack of independence from the directors whose alleged malfeasance was a subject of plaintiffs' complaint.

Notably, however, at the time the motions for summary judgment were heard in 1983 all parties had been operating under an order entered on 17 November 1982 staying discovery pending further orders to be issued after submission of the committee's report to the trial court. Although the report was filed with the clerk of superior court on or about 29 July 1983, the stay on discovery was not lifted prior to the entry of the 1983 summary judgment. In opposition to defendants' motions, plaintiffs argued that the committee report was not sufficient to justify entry of summary judgment. In support of this, plaintiffs submitted an affidavit of an insurance industry executive criticizing the report, as well as argument that the use of a report such as the one tendered by the committee should not, as a matter of law, be available as a defense to a shareholder derivative suit. In deciding the motions, though, the trial court rejected plaintiffs' argument as to the propriety of the committee report as a defense, instead reasoning that the approach set forth in *Auerbach v. Bennett*, 47 N.Y.2d 619, 393 N.E.2d 994, 419 N.Y.S.2d 920 (1979), was the most appropriate way to resolve the question of whether a shareholder derivative suit should be dismissed or settled.

When this Court filed the opinion reported at 320 N.C. 465, we not only rejected the *Auerbach* approach that had been applied by the trial court in deciding the motions for summary judgment (and which would have limited judicial review of the committee and its recommendation of settlement or dismissal to certain narrow issues), but we also stated that:

Upon remand plaintiffs shall be permitted to develop and present evidence on this issue, such as: (1) that the committee, though perhaps disinterested and independent, may not have been *qualified* to assess intricate and allegedly false tax and accounting information supplied to it by those within the corporate structure who would benefit from decisions not to proceed with litigation, (2) that, in fact, false and/or incomplete information was supplied to the committee because of the nonadversarial way in which it gathered and evaluated information, and therefore (3) in light of these and other problems which arise from the structural bias inherent in the use of

ALFORD v. SHAW

[327 N.C. 526 (1990)]

the board-appointed special litigation committees, that the committee's decision with respect to the litigation eviscerates plaintiffs' opportunities as minority shareholders to vindicate their rights under North Carolina law. *Cf.* Dent, *The Power of Directors to Terminate Shareholder Litigations: The Death of the Derivative Suit*, 75 Nw. U.L. Rev. 96 (1981).

*Alford v. Shaw*, 320 N.C. at 473, 358 S.E.2d at 328. This directive gave the plaintiffs an opportunity to investigate the susceptibility of the committee in the present case to structural bias, and to examine adversarially whether the committee was misled because it had either gathered or was supplied information insufficient to prepare a balanced and thorough report to the court in support of AAA's motion for partial summary judgment and for approval of settlement.[5]

Thus, although the primary focus of this Court's opinion was to reject the trial court's use of the *Auerbach* approach and instead to explain that a two-step approach deriving from the case of *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del. 1981), is more consistent with Chapter 55 of the North Carolina General Statutes, the opinion also acknowledged that in this particular case the combination of the stay on discovery, and the erroneous application of the *Auerbach* approach at the trial court level resulted in an incomplete record. On remand, in order to properly evaluate the committee and the committee recommendation pursuant to the two-step approach, discovery would be permitted to enable the trial court to have the benefit of plaintiffs' chance to test the legitimacy of the committee and its report via the gauntlet of an adversarial discovery process. In conclusion, we hold that the trial court properly allowed discovery, and that the 1983 summary judgment which was properly vacated[6] by the Court of Appeals, 72 N.C. App. 537, 324 S.E.2d 878, *modified and aff'd*, 320 N.C. 465, 358 S.E.2d 323, did not establish

---

5. Technically, the first two items listed in the above quotation fall under step one; the third is within the ambit of step two.

6. We further note that the Court of Appeals' decision *vacating* the summary judgment, 72 N.C. App. 537, 324 S.E.2d 878, rendered the judgment null and void. "Vacate" means "[t]o annul; to set aside; to cancel or rescind. To render an act void; as, to vacate an entry of record, or a judgment. As applied to a judgment or decree it is not synonymous with 'suspend' which means to stay enforcement of judgment or decree." Black's Law Dictionary 1388 (rev. 5th ed. 1979). *See generally* 49 C.J.S. *Judgments* § 306 (1947). Once the judgment was vacated, no part of it could thereafter be the law of the case.

ALFORD v. SHAW

[327 N.C. 526 (1990)]

the good faith, independence and lack of bias of the committee as the law of this case.

Having determined that discovery was correctly permitted upon remand in this case, we now consider appellants' challenges to the post-discovery procedures followed below.

## V. *Post-discovery Procedure.*

[6] Prior to the hearing resulting in the judgment which is the subject of the present review, the trial judge sent a letter to counsel for all parties in which he made the following statements:

> 1. [T]he modified *Zapata* rule of law adopted by our Supreme Court, opinion by Martin, J., is really a G.S. 55-55(c) inspired overlay on the Rules of Civil Procedure interposed, as a hybrid, somewhere between Rule 12(b) and Rule 56, in which the Court, in its discretion and using it [sic] own "business judgment", decides whether or not the derivative suit should proceed to jury trial. Since the complaint, as in 12(b) motions, and matters outside the complaint, Rule 56, are considered, the procedure is not unlike a probable cause hearing in a criminal case except the burden of proof is on the defendant.

> 2. [A] fortiorari [sic], the rule requires a judicial assessment of the "report of the special committee, along with all the other facts and circumstances in the case" to determine in its discretion, applying its own independent business judgment, whether or not the "defendants will be able to show that the transaction . . . . . . was just and reasonable to the corporation;" and, if the Court does not so find, the case can be dismissed if the "amount of the recovery would not be sufficient to outweigh the detriment to the corporation," i.e. "it would still not be in the best interest of the corporation to pursue the derivative action."

*See Kaplan v. Wyatt*, 484 A.2d 501, 506-07. After all counsel had an opportunity to comment and present argument on these statements, the trial judge adopted them as parts of a prehearing order which, as he later stated, "sets forth the road map for the procedure to be followed."

Apparently because he likened the N.C.G.S. § 55-55 hearing to a preliminary or probable cause hearing, the trial judge decided to treat the committee's report akin to an item of evidence in

ALFORD v. SHAW

[327 N.C. 526 (1990)]

a criminal hearing: because the plaintiff-shareholders challenged the reliability of the report on grounds that it was the fruit of an illegitimate process of investigation by the committee, the trial court directed these plaintiffs to file a "motion to suppress" the report. Plaintiffs argue that by having to file this motion, the burden of proof as to the step one issues was shifted to plaintiffs. We disagree.

Although denominated a motion "to suppress" the committee report, it is evident from the record that the trial court intended this motion to serve the function of defining the issues that plaintiffs intended to contest at the step one hearing. When, pursuant to the court's directive to file this motion, plaintiffs filed a 95-page document captioned "Motion to suppress and further response in opposition to motions for summary judgment," the court ordered plaintiffs to refile the motion. In so doing the court stated:

> The materials you filed 30 January 1989, while informative, are unacceptable as a "notice pleading".
>
> What the Court requires is a motion, not exceeding two pages, in "clear and concise" language setting forth your contentions about the special committee report and/or its authors. The Supreme Court opinion sets forth possible areas of inquiry, as does Paragraph 4 of my 11 January 1989 letter. But the parties are entitled to know your contentions in order that they may file a response and to prepare their presentations.

Plaintiffs complied with this by filing a two-page motion on 7 February 1989, listing four contentions which defined their objections to the committee report and the process by which it came into being. Defendants subsequently filed responses to plaintiffs' motion, and as a result the trial judge was able to issue a prehearing order which defined the parameters of the hearing to be held on step one. The pretrial order provided as follows:

> Based on the motion filed by plaintiffs, 7 February, 1989, and responses by defendants, and in order to settle the issues presented for the court by the motion, the court enters the following prehearing order with respect to the "first step" inquiry required by *Zapata*.
>
> A. *The following facts are uncontroverted:*
>
> 1. Judge Frank M. Parker and Marion G. Follin were independent and unbiased when selected, and their selection

as members of the special committee was proper in all respects; and

2. Plaintiffs do not question or contest the good faith of the special committee, individually and collectively.

B. *Plaintiffs contend and defendants deny*:

1. During the investigative process, the special committee abandoned its independence, as follows:

(a) The special committee was improperly influenced by structural bias, peer pressure, and group loyalty toward defendant directors and their lawyers; and

(b) The committee improperly submitted to directives and suggestions of defendants' attorneys; and

(c) The committee improperly assisted defendants in consummation of the merger; and

(d) The committee failed to make a reasonable investigation of the plaintiff's [sic] claims; and

2. The committee based its recommendations on false and incomplete information given to them by the defendants.

Although the burden of proof is on the defendants to prove by the greater weight of the evidence that the special committee report was the product of the independent judgment of the committeemen, formed after a reasonable investigation, and based on true and complete information, in order to expedite the resolution of the *Zapata* "first step" inquiry:

1. Plaintiffs shall file a trial brief with the court on or before 1 March, 1989, setting forth with particularity, by admissible documents, references to depositions, or other admissible offerings, the evidence upon which they rely to support their contentions set forth in section "B." above, and

2. In the event the plaintiff [sic] expects to call a witness or witnesses to present oral testimony during the hearing, plaintiff [sic] shall designate the name or names of such witness or witnesses in the trial brief.

3. Defendants shall file a trial brief with the court on or before 8 March, 1989, setting forth with particularity, by reference or otherwise, the evidence upon which they rely

ALFORD v. SHAW

[327 N.C. 526 (1990)]

in support of their contentions that there was a reasonable investigation by the independent committee utilizing true and complete information; and

4. Defendants should also include the names of witnesses or of a witness they expect to call, if any, for oral testimony.

NOTE: Parties may reference tabs in notebooks filed previously in lieu of duplicate referencing.

Additions, corrections, or objections to this prehearing order shall be timely filed or deemed waived.

Plaintiffs neither objected nor offered any corrections to this order, although defendants filed objections to the phrase requiring "true and complete" information.

We hold that while perhaps inartfully labeled, the trial judge's requirement that plaintiffs file a written statement of the issues they planned to contest at the hearing was not error. Without such a definition of issues the resulting hearing might have turned into an unmanageably chaotic theatre of accusations. In the exercise of his authority to control the proceedings under N.C.G.S. § 55-55(c), the trial judge proceeded properly in requiring a definition of the contested issues.[7] *Cf.* Fed. R. Civ. P. 23.1, Notes of Advisory Committee on Rules (1983) ("The court has inherent power to provide for the conduct of the proceedings in a derivative action, including the power to determine the course of the proceedings . . . ").

Having successfully navigated the partially charted waters of the *Alford* odyssey thus far, the trial court proceeded with the hearing. We next take up plaintiffs' contentions (1) that the trial judge erroneously shifted the burden of proof concerning the step one issues to plaintiffs during the hearing; and (2) that the trial court erroneously resolved contested issues of fact instead of submitting the case on the merits to a jury.

VI. *The Hearing.*

The hearing on the motions filed under N.C.G.S. § 55-55(c) was appropriately held by the trial judge sitting without a jury. *See Houle v. Low*, 407 Mass. 810, 824, 556 N.E.2d 51, 59 (1990)

---

7. Needless to say, plaintiffs' objections to the committee or the report would not have appeared in the complaint initially, as the committee was formed after the complaint was filed.

ALFORD v. SHAW

[327 N.C. 526 (1990)]

(remanding shareholder derivative suit "for an evidentiary hearing before a judge without a jury to determine whether the [special investigation] committee (McKee) was independent and unbiased"). To anticipate several of plaintiffs' arguments with regard to the conduct of the hearing, we hold now that a litigant has no right to the determination of factual issues by a jury during proceedings occurring pursuant to N.C.G.S. § 55-55(c). This statute provides in part that a derivative action "shall not be discontinued, dismissed, compromised or settled without the approval of the court." In this section of the statute, it is clear that the word "court" refers to the trial judge and not to a jury. The remaining sentences of N.C.G.S. § 55-55(c) refer to discretionary decisions exercisable properly only by the trial judge; clearly the legislature did not intend that a jury be involved in the procedures required under N.C.G.S. § 55-55(c). To have so required would have had the effect of disturbing the balance between the right of shareholders to initiate a derivative suit and the ability of the corporation to address the concerns raised by the suit expeditiously. Thus, the trial judge in the present case proceeded properly insofar as he did not involve a jury in the decision whether to allow the case to be discontinued, dismissed, compromised or settled.[8]

The crux of the question now is whether the trial judge's proceedings at the hearing and his entry of judgment comported with N.C.G.S. § 55-55(c) and with this Court's opinion in 320 N.C. 465. When the trial judge conducted the hearing on the plaintiffs' motion to suppress, he also heard arguments and received evidence on a number of other motions which sought settlement and dismissal of the suit, namely, motions to dismiss and motions for summary judgment. From our review of the record, including the transcript of this hearing, it is apparent that the trial judge did not shift the burden of proof on step one issues to the plaintiffs. After preliminary discussion, the hearing began with a presentation of evidence by AAA, followed by additional evidence submitted by the defendants. Then, plaintiffs put on evidence as to their conten-

---

8. We note, too, that although a litigant's right to have a jury try issues of fact concerning the *merits* of the action initiated by the filing of a derivative suit complaint is guaranteed by the Constitution of North Carolina, *Faircloth v. Beard*, 320 N.C. 505, 358 S.E.2d 512 (1987), the procedure required by N.C.G.S. § 55-55(c) did not exist before the adoption of the Constitution of 1868, and therefore no State constitutional right exists to a trial by jury of factual issues that might arise during the course of the proceedings required under this statute. *Kiser v. Kiser*, 325 N.C. 502, 385 S.E.2d 487 (1989).

ALFORD v. SHAW

[327 N.C. 526 (1990)]

tions. We see nothing in the record to indicate that the trial court shifted any burdens of proof to the plaintiffs during this hearing. Accordingly, we reject the contention that such burdens were shifted to the plaintiffs.

[7] The question then becomes whether the trial judge appropriately resolved contested issues of fact during the hearing. As discussed below, we hold that he did.

For reasons not fully apparent from the record, the trial judge stated near the outset of the motion hearing which began on 13 March 1989 that "[the] issue which I've narrowly defined is whether or not a genuine issue of material fact exist [sic] as to the Committee's independence and procedural fairness in conducting a reasonably complete investigation. Now, that is our point of departure. I'll hear from Triple A." However, the hearing was also concerned with the plaintiffs' "motion to suppress," and thus the court also received numerous items of evidence relevant to the determination of that motion. Because the plaintiffs' motion raised virtually the same issues that were the subject of the motions for summary judgment, much of the evidence submitted was relevant to all of these motions. However, the fact that the motion for summary judgment was determinable on a "material issue of fact" standard and the motion to suppress was brought under the aegis of N.C.G.S. § 55-55(c), resulted in an unusual judgment.

At the conclusion of the presentation of evidence and arguments concerning the step one issues, the court announced that, having determined that there was no material issue of fact, summary judgment was thereupon granted for defendants on step one. He also denied plaintiffs' motion. However, the written judgment entered on 19 June 1989 with respect to this step-one stage of the proceedings granting summary judgment to defendants also contains 108 pages of findings of facts which were made "in deciding Plaintiffs' Motion to Suppress and pursuant to the Court's authority and duties under Chapter 55 of the General Statutes of North Carolina and *Alford v. Shaw*, 320 N.C. 465, 358 S.E.2d 323 (1987)." Following these findings the judgment recites ten conclusions of law, each addressing step one issues, and then under a heading captioned "Ruling" states: "The Motion to Suppress is DENIED." In light of the fact that the court found it necessary to make these findings in order to resolve issues which were common to the summary judgment motions and to the plaintiffs' motion challeng-

ALFORD v. SHAW

[327 N.C. 526 (1990)]

ing the committee and its report, we hold that the court erroneously entered partial summary judgment in favor of defendants with respect to step one. *See, e.g., Stonestreet v. Motors, Inc.*, 18 N.C. App. 527, 197 S.E.2d 579. This does not by itself, however, determine the outcome of the present appeal. We further hold that in deciding whether to grant plaintiffs' motion the trial judge properly resolved issues of fact which arose during the hearing.

As discussed earlier, proceedings under N.C.G.S. § 55-55(c) are held before a trial judge sitting without a jury. When a party challenges the recommendation of the corporation in whose name a lawsuit was initiated derivatively, it is the court's responsibility first, to require the party taking issue with the recommendation to outline his contentions so he may receive an appropriate response from the other parties to the suit, and then secondly, to hear evidence on these contentions, in order to be able to determine whether the lawsuit is to be discontinued, dismissed, settled, or turned over to the plaintiff-shareholders or the corporation for litigation. As the judicial official charged under N.C.G.S. § 55-55(c) with this authority, the trial judge may well have to resolve issues of fact to decide whether to permit the suit to go forward, be settled, or be dismissed. In the instant case, the trial judge did so valiantly.

In this appeal, the only issue plaintiffs have properly brought forward for review is whether the trial court properly entered summary judgment in the context of the 200-page judgment in this case. Although we have determined that it was erroneous to have entered summary judgment with respect to step one, the record is clear that all parties were given a full opportunity to present evidence relevant to the determination of the issues defined by plaintiffs' motion (and the responses thereto). The hearing on these step one issues proceeded for six days, with the fruit of many months of discovery being presented for consideration. Given the fact that all parties were aware that this hearing was to address not only defendants' motions for summary judgment but the plaintiffs' objections to the committee and its report, we hold that the trial judge properly entered findings of fact which supported his determination, under N.C.G.S. § 55-55(c), that the committee report was the result of a proper investigation conducted by individuals who did not lose their independent perspective during the course of their investigation.

ALFORD v. SHAW

[327 N.C. 526 (1990)]

In their brief to this Court plaintiffs do not contend that the findings made by the trial judge are not supported by competent evidence. *See Higgins v. Simmons*, 324 N.C. 100, 376 S.E.2d 449 (1989); *Smith v. Butler Mtn. Estates Property Owners Assoc.*, 324 N.C. 80, 375 S.E.2d 905 (1989). Instead, plaintiffs argue that assuming all of their evidence was credible, the trial court should have determined that there were material issues of fact and thus it should have granted plaintiffs' motion to suppress the committee report and denied defendants' motions for summary judgment. While we agree that summary judgment was improperly ordered on step one, upon a careful examination of the record, we have determined that the trial court's findings are supported by competent evidence, and thus are conclusive on appeal. *E.g., Higgins v. Simmons*, 324 N.C. 100, 376 S.E.2d 449. Because these findings support the conclusions of law with respect to the issues framed by plaintiffs' "motion to suppress" and defendants' responses thereto, we hold that the trial court properly denied plaintiffs' motion to suppress the committee report.

Having resolved the issues arising under step one, the trial court turned to the second step of the procedure enunciated in 320 N.C. 465. The hearing on step two issues was held over the course of a number of days, during which all parties had the opportunity to present extensive evidence, including the live testimony of witnesses. As with step one, the court made numerous findings of fact before entering judgment in favor of defendants with respect to step two. While plaintiffs' appellate brief assigns as error the granting of summary judgment at both step one and step two, their argument for both is that the trial court inappropriately made findings of fact. However, the transcript of the hearing reveals that during this proceeding, counsel for the plaintiffs stated that they consented to the trial court's making findings of fact and conclusions of law with respect to step two. Having agreed to this procedure at the trial level, they cannot now complain about it upon appeal. *Cf. Higgins v. Simmons*, 324 N.C. 100, 103, 376 S.E.2d 449, 452 ("A party may not exchange his trial horse for what he perceives to be a steadier mount on appeal."). Further, as with step one, plaintiffs do not challenge the sufficiency of the findings nor do they allege that the findings are not supported by competent evidence.[9] Such findings are thus conclusive on this appeal.

---

9. In fact, plaintiffs state that "[i]n the interest of time and space, plaintiffs will not argue in this brief the merits of the committee report eviscerating plaintiffs'

As we stated in *Alford*, 320 N.C. 465, 473, 358 S.E.2d 323, 328, if the trial court determines that the committee report is the product of an independent and thorough investigation, the court "must make a fair assessment of the report of the special committee, along with all the other facts and circumstances in the case, in order to determine whether the defendants will be able to show that the transaction complained of was just and reasonable to the corporation." In this case we find no reviewable assignments of error with respect to the second step of the proceedings. Insofar as there may be any inadvertent potential traps which have been set in the instant case, they are not before us in this appeal to unspring.

The judgment entered by the trial court is

Affirmed.

---

claims, and the [trial] Court's rulings supporting the committee report, but in case the Court is interested, the plaintiffs invite the Court's attention to [various items in the record]." We assume that the plaintiffs have presented argument with respect to the alleged errors which they deem most important. This Court will not engage in "a judicial Easter egg hunt," *State v. Kirby*, 276 N.C. 123, 133, 171 S.E.2d 416, 423 (1970), on behalf of a litigant.