SCOTT v. SOKOLOV, 1996 NCBC 2

STATE OF NORTH CAROLINA
COUNTY OF DURHAM

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
96-CVS-2748

STEVEN M. SCOTT, MD, on his own
behalf and on behalf of Coastal
Physician Group, Inc., and BERTRAM
E. WALLS, MD, MBA, on his own
behalf and on behalf of coastal
Physician Group, Inc.,

   Plaintiffs

    v.

JACQUE JENNING SOKOLOV,
JOSEPH G. PIEMONT, STEPHEN D.
CORMAN, and COASTAL
PHYSICIAN GROUP, INC.,

   Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER AND OPINION**

{1} This case is before the Court on the joint motion of plaintiffs and defendant Coastal Physician Group, Inc., for approval of settlement with defendant Stephen D. Corman. A hearing was held in Guilford County on November 15, 1996. For the reasons set forth below, the Court approves settlement of this derivative action with respect to Mr. Corman and will not require that notice be sent to all shareholders.

*James T. Williams, Jr., Mack Sperling, James C. Adams, II of Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P.; Richard M. Hutson and James H. Hughes of Hutson Hughes & Powell, P.A.; and Jay B. Kasner of Skadden, Arps, Slate, Meagher & Flom, attorneys for plaintiff Steven M. Scott.*

*John R. Jolly and David Dreifus of Poyner & Spruill, attorneys for plaintiff Bertram E. Walls.*

*Reginald B. Gillispie of Faison & Fletcher; and David D. Wexler of Rosenfeld, Meyer & Susman, attorneys for defendant Jacque Jenning Sokolov.*

*John Northen of Northen, Blue, Rooks, Thibault, Anderson & Woods, L.L.P.; and David McBride of Young, Conaway, Stargatt & Taylor, attorneys for defendant Joseph G. Piemont.*

*H. Spencer Barrow and J. Roger Edwards, attorneys for defendant Stephen D. Corman.*

*Charles Gordon Brown and Scott D. Zimmerman of Brown & Bunch; and Paul K. Rowe and Eric Roth of Wachtell, Lipton, Rosen & Katz, attorneys for defendant Coastal Physician Group, Inc.*

### RELEVANT STATUTES

{2} N.C.G.S. § 55-7-47 provides:

  In any derivative proceeding in the right of a foreign corporation, the matters covered by this Part shall be governed by the laws of the jurisdiction of the

foreign corporation *except for the matters governed by G.S. 55-7-43, 55-7-45, and 55-7-46.*

N.C.G.S. § 55-7-47 (Supp. 1996) (emphasis added).

{3} N.C.G.S. § 55-7-45 provides:

(a) A derivative proceeding may not be discontinued or settled without the court's approval. If the court determines that a proposed discontinuance or settlement will substantially affect the interests of the corporation's shareholders or a class of shareholders, the court shall direct that notice be given to the shareholders affected.

N.C.G.S. § 55-7-45(a) (Supp. 1996).

## FACTUAL BACKGROUND

{4} This action was instituted by Steven M. Scott and Bertram E. Walls, who asserted both individual claims and derivative claims on behalf of Coastal Physician Group, Inc. ("Coastal"). Both Dr. Scott and Dr. Walls were shareholders and directors of Coastal. Dr. Scott was one of the founders of the corporation, formerly its Chief Executive Officer, and current owner of approximately thirty percent of its stock. Together, Dr. Scott and Dr. Walls represent one faction of the management of Coastal. Dr. Sokolov is Chairman of the Board of Directors of Coastal and a substantial shareholder. Mr. Piemont is former General Counsel of Coastal and at the time of the filing of the complaint was serving as Chief Executive Officer of Coastal under a contract which is at issue in this case. Mr. Corman was the Chief Financial Officer of Coastal and a Director. Dr. Sokolov, Mr. Piemont, and Mr. Corman represented a separate faction of management of Coastal which was adverse to Dr. Scott and Dr. Walls. This lawsuit is only one skirmish in a larger battle between these two factions for control of management of Coastal and determination of the direction it will follow in the future. While this lawsuit has been pending, the two factions engaged in a hotly contested proxy fight for two positions on the Board of Directors of Coastal. Dr. Scott and Dr. Walls prevailed in that fight. The outcome of the proxy fight made moot most, but not all, of the issues in this case. Coastal has experienced a steep decline in the value of its shares, has hired outside "turnaround experts" to assist it in restructuring its operations, and is in a financial position which requires tight cash control management.

{5} Mr. Corman, Dr. Scott, Dr. Walls, and Coastal have now reached a settlement which provides for termination of Corman's involvement in this lawsuit and his employment contract with Coastal. Corman's employment contract was not an issue in this lawsuit. Extensive discovery took place prior to settlement. The parties seek court approval of the dismissal of this action because this is a derivative action and N.C.G.S. § 55-7-45 requires Court approval before a dismissal can be filed. The Court must also determine if notice to the shareholders is required under the circumstances.

{6} The Court has reviewed the proposed settlement agreement and the affidavit of James Clarke, both of which it permitted to be filed under seal since the documents contained detailed information with respect to Mr. Corman's compensation and benefits. After due notice to all parties, a hearing was held on the motion in open court on November 15, 1996. Counsel for both Dr. Sokolov and Mr. Piemont filed letters with the Court stating that their clients had no objection to Court approval of the settlement with Mr. Corman.

{7} This settlement was approved by the Board of Directors of the defendant corporation after careful consideration, thorough discussion, full disclosure, and advice of independent counsel for the corporation. The decision was approved by all of the independent outside directors. Dr. Scott, Dr. Walls, and Mr. Corman did not participate in the discussions. The Board of Directors acted independently and even made substantive changes to the settlement agreement which was presented to it. The directors exercised their independent business judgment in rendering their decision with respect to the settlement agreement.

## ISSUES

{8} Initially, the Court must determine whether the law of the State of Delaware (where Coastal is domiciled) or the State of North Carolina (the forum state) governs the procedure by which settlement in a derivative action is approved. N.C.G.S. § 55-7-47 dictates that the procedure for settlement of derivative actions involving foreign corporations will be governed by North Carolina law. The Court will thus apply the procedure set forth in N.C.G.S. § 55-7-45 in ruling on this motion.

{9} Next, the Court must determine what standards to apply under North Carolina law in approving the settlement. The only guidance on this point is found in the case of *Alford v. Shaw,* 327 N.C. 526, 398 S.E.2d 445 (1990), which involved application of N.C.G.S. § 55-55, the predecessor to N.C.G.S. § 55-7-45. In *Alford*, the North Carolina Supreme Court stated:

> (T)he court is to balance (1) any legitimate corporate claims as brought forward in the derivative shareholder suit against (2) the corporation's best interests . . . . Factors to be considered in this . . . process include: costs to the corporation of litigating the suit (including attorneys' fees, out-of-pocket expenses related to the litigation, time spent by corporate personnel preparing for and participating in litigation, and indemnification) and the benefits to the corporation in continuing the suit.

327 N.C. at 540, 398 S.E.2d at 453.

{10} Other factors cited by the Alford Court were '"such ethical, commercial, promotional, public relations and fiscal factors as may be involved in a given situation."' *Id.* (quoting *Kaplan v. Wyatt,* 484 A.2d 501, 509 (Del. Ch. 1984), *aff'd,* 499 A.2d 1184 (Del. 1985)). Each case must, of necessity, be reviewed on its own facts and circumstances. Different weight may be given to different factors depending on the facts and circumstances. On the whole, it is the court's duty to insure that the best interests of the shareholders have been served before approving any settlement. To that end, the Supreme Court in *Alford* directed that trial judges exercise their own independent business judgment before approving any settlement. The trial court is not limited to a review of the exercise of independent judgment by the directors of the corporation on behalf of which suit has been brought, although the decision of the directors is a significant factor.

{11} The Court begins its analysis of the relevant factors in this case with a review of the decision of the directors of Coastal. The decision to approve the settlement was made by a majority of disinterested, independent, and knowledgeable outside directors. Dr. Scott, Dr. Walls, and Mr. Corman did not even participate in the discussions. Full disclosure of all the facts relevant to the directors' decision was made. The directors had adequate time to consider their decision. They received advice from highly qualified, independent, outside counsel hired by the directors. The directors did not rubberstamp the agreement, but actually suggested that substantive changes be made, which were subsequently approved by the parties. There was a thorough discussion of the issues and an opportunity for each director to ask questions and obtain answers to those questions. The directors considered the financial impact of the settlement on the corporation and the best interests of the shareholders. They took into account the costs of the litigation and the benefit to the corporation from pursuing it. They also considered the needs of the business and the demands on its management in a time of distress for the business. The directors relied on their own counsel and not counsel for the parties in reviewing the agreement. In summary, the directors followed the proper procedures and considered the most relevant factors in reaching their decision, and the Court finds that they exercised their independent business judgment in approving the settlement agreement. The proper exercise of independent business judgment by disinterested outside directors carefully considering the best interests of the shareholders is entitled to substantial deference from the Court.

{12} The Court has also considered the strength and weakness of the claims against Mr. Corman, the benefit to the corporation of getting a unified management team in place, the value to the corporation of continuing the litigation, the financial impact on the business of both the settlement and cost of ongoing

litigation, Mr. Corman's ongoing obligations under the settlement agreement to assist the corporation, the need for the corporation to focus on restructuring its operations and assembling a unified management team, the fact that at least part of the benefit to Mr. Corman in settlement of his contract claim is dependent on the financial success of the business, and the fact that the shareholders have recently had the opportunity to express their preferences with respect to management of the business after a lengthy proxy fight in which both factions were able to present their views on the future of the company to the shareholders. The agreement was negotiated at arm's length by able and experienced counsel, and there is no appearance of any collusion in the negotiations.

{13} Based on the factors cited above, the Court, exercising its own independent business judgment, concludes that the settlement agreement, including dismissal of the claims against Mr. Corman, is fair and reasonable under the circumstances in this case and is in the best interests of the shareholders of Coastal.

{14} Finally, the Court must determine whether or not notice must be given to any affected shareholder. In doing so, the Court must decide whether the settlement or discontinuance will substantially affect the interests of the corporation's shareholders or a class of shareholders. N.C.G.S. § 55-7-45. This settlement will not substantially affect the rights of the shareholders in general or the rights of any specific class of shareholders. Most of the issues in this case became moot as a result of the outcome of the proxy fight. The only remaining substantive issue, which relates to the Piemont contract, is not finally resolved by this settlement. The settlement does not have any ongoing impact on the rights of shareholders. The shareholders have recently had the opportunity to express their management preference in the proxy fight, and the expense of additional notice to the shareholders of this settlement and the departure of Mr. Corman is not warranted. The Court notes that a press release has been issued by the parties which would alert most shareholders to the existence of the settlement. The issuance of the press release, while beneficial, is not a substitute for the Court's obligations to determine if substantial shareholder rights have been affected and require notice to shareholders, if appropriate. The Court concludes that no notice is required to the shareholders under the circumstances of this settlement because no substantial shareholder rights have been affected.

{15} In deciding the issues presented by this motion, the Court has also carefully reviewed the Delaware law with respect to the issues and finds that application of Delaware law, specifically Delaware Chancery Court Rule 23.1, would not change the decision of the Court on the issues. While not identical, the corporate laws of North Carolina and Delaware with respect to settlement of derivative actions serve substantially the same purposes and have the same goals.

{16} THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that the settlement agreement with and dismissal of claims against Stephen D. Corman in this action are hereby approved.


This 2nd day of December, 1996.